# United States Brick Company to use, Appellant, v. Middletown Shale Brick Company. United States Brick Company to use, Appellant, v. Reading Shale Brick Company.

*Set-off—Insolvency—Receiver—Purchase of claims for purposes of set-off.*

1. The appointment of a receiver, and not the filing of a bill praying therefor, is to be taken as changing the situation in such manner as to put an end to the right of the insolvent company's debtors to acquire claims against it capable of being set off against its demands when sued for by the receiver.

2. A debtor of an insolvent corporation, knowing of the insolvency of the corporation, and that an application for a receiver has been made, may purchase a claim against the corporation while the application is pending and use it as a set-off against the receiver.

Argued Feb. 28, 1910. Appeals, Nos. 359, Jan. T., 1909, and No. 360, Jan. T., 1909, by plaintiffs, from orders of C. P. Berks Co., Feb. T., 1909, Nos. 54 and 55, discharging rules for judgments for want of sufficient affidavits of defense in cases of United States Brick Company to use of Robert Pennington, Receiver, v. Middletown Shale Brick Company and United States Brick Company to use of Robert Pennington, Receiver, v. Reading Shale Brick Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Assumpsit by a receiver to collect an indebtedness due an insolvent corporation.

Rule for judgment for want of a sufficient affidavit of defense.

ENDLICH, P. J., filed the following opinion:

This is a rule for judgment for want of a sufficient affidavit of defense. The statement avers that the United States Brick Company and the defendant had the same treasurer; that as treasurer of the former and with the

knowledge, etc., of the officers and directors of both companies, he advanced its moneys to himself as treasurer for the latter company and disbursed them for its purposes; that as treasurer of the United States Brick Company he received from himself as treasurer of defendant company partial reimbursements upon such advances; that on April 25, 1907, there was a balance due the United States Brick Company by the defendant company amounting (for present purposes) to $11,419.19; that on and after July 1, 1907, the United States Brick Company became and remained insolvent; that on August 31, 1907, a bill in equity was filed on behalf of creditors of the company praying for a receivership; that thereupon, on July 27, 1908, a receiver, the use plaintiff in this action, was appointed; and that of all of this the officers and directors of the defendant company were fully aware. The affidavit of defense, made by the present treasurer of the defendant company, now under a management different from that previously controlling its affairs, disclaims information as to and neither admits nor denies the allegations of the statement concerning the knowledge, etc., of the then officers and directors of the two companies of the actions of their treasurer, and avers that on April 1, 1907, the United States Brick Company made its note (secured by 600 shares of Middletown Shale Brick Company stock) for $35,000, payable six months after date to its own order, and in consideration of the payment of a like sum indorsed and delivered it to B. Dawson Coleman, together with the collateral; that, the note not being paid at maturity, the collateral was sold and the net proceeds of the same, $1,793.88, credited on the note, leaving a balance due upon it of $33,205.12; that in December, 1907, the defendant company purchased the note from Coleman for value; and that consequently, instead of the defendant company being indebted to the United States Brick Company, the latter owes the defendant $21,791.93, with interest.

That the whole doctrine of set-off is in its origin founded

on equitable considerations: Hibert v. Lang, 165 Pa. 439, and that the principles of equity may be invoked in support of a claim not strictly within the terms of our defalcation act: Hibert v. Lang, 165 Pa. 439; Smith & Co. v. Myler, 22 Pa. 36; Skinner v. Chase, 6 Pa. Superior Ct. 279, 283, is undoubtedly true. But as regards cross demands covered by that act, broadly construed as it is, it has long been settled in this state that a defendant's right of set-off, unconnected with the cause of plaintiff's action, rests upon the statute: Rider v. Johnson, 20 Pa. 190, 192; Tagg v. Bowman, 108 Pa. 273, 277, and is not therefore controllable by any equitable discretion: Dry v. Filbert, 2 Woodw. 134. For this reason, as to such demands, the decisions of other jurisdictions where the right is looked upon as an equitable rather than a legal one, are inconclusive; and similarly inapplicable are those of our own courts involving demands not embraced in the defalcation act. It is with a demand which is embraced in it that we have to do here. Its admissibility is not ruled by decisions such as Venango Nat. Bank v. Taylor, 56 Pa. 14, and Thorp v. Wegefarth, 56 Pa. 82, in which the questions of set-off adjudicated arose, not under our statute, but under the provisions of the national banking law—nor by those turning upon the phraseology of the banking laws of this state: Philips v. Bank, 18 Pa. 394; Basehore v. Rhodes, 85 Pa. 44. No doubt, like all statutes: Thomas's Elect., 198 Pa. 546, 550, our defalcation act is subject to the canon of interpretation forbidding a construction, if avoidable, which would lead to unjust or inequitable results in their operation. Thus, in a number of instances, the right has been denied to a member of an insolvent mutual insurance company to set off against his liability as such to the company a demand held by him against it as an insured or as the assignee of an insured. But those decisions rest upon the ground stated by Chief Justice GIBSON in Hillier v. Ins. Co., 3 Pa. 470, at p. 474, that every member of such a company "is an insurer as well as a party insured; and that he is bound to

make compensation, as well as entitled to receive it"—
so that to permit him to set off his demand against his
liability would work a gross injustice to his fellows and a
virtual abrogation of his fundamental contract with
them: Long v. Ins. Co., 6 Pa. 421, 424; Schofield v.
Lafferty, 17 Pa. Superior Ct. 8. Similarly a stockholder
in a corporation owing unpaid stock subscriptions cannot
after the company's insolvency set off against that lia-
bility a claim held by him against the company: Macun-
gie Savings Bank v. Bastian, 10 W. N. C. 71—because,
whether paid or unpaid, the capital stock constitutes a
trust fund for creditors generally: Macungie Savings Bank
v. Bastian, 10 W. N. C. 71; Pipe & Foundry Co. v. Bullock,
174 Pa. 93, which a stockholder is bound by his contract
of subscription to make up to the extent undertaken by
him, and which by that contract he has waived the right to
impair to the detriment of other creditors by such set-off.

It is of course true that the allowance of the set-off
here claimed may be regarded as in effect the concession
to defendant of a preference over other creditors of the
United States Brick Company, which, even if otherwise
unassailable, will produce manifest inequality. And yet,
with every disposition to escape from such a result if
possible, it is not seen how for the purpose of this rule it
can be rejected.

The affidavit of defense, under the practice act of
1887, is made to the plaintiff's declaration: Ashman v.
Weigley, 148 Pa. 61. Its sole purpose is to meet the
plaintiff's demand as declared by him and prevent a
summary judgment; wherefore it cannot be given the
effect of inferentially admitting anything making against
defendant which is not averred in the declaration: Taylor
v. Beatty, 202 Pa. 120, 126–127. The declaration in this
case, in the nature of things, has nothing to say concern-
ing the transaction between Coleman and the defendant.
In the averment in the affidavit of defense of the transfer
of the United States Brick Company's note by Coleman
to defendant, it was therefore not necessary to negative

an intent on defendant's part in the acquisition of the note to use it as a set-off against the United States Brick Company's demand, even if the existence of such intent would forbid its use for that purpose, which it may not: Primer v. Kuhn, 1 Dall. 452; Rider v. Johnson, 20 Pa. 190, 192; McGowan v. Budlong, 79 Pa. 470; Skinner v. Chase, 6 Pa. Superior Ct. 279, 282, so long as the transfer was actual and bona fide, making the defendant the absolute owner of the note: see Oyster v. Short, 177 Pa. 589, as the affidavit explicitly avers it to be.  Nor does the fact of the insolvency of the United States Brick Company at the time of the transfer, declared and not denied to have been known to defendant, of itself exclude the availability of the defense made.  There is abundance of authority, from Boinod v. Pelosi, 2 Dall. 43, down at least to Burford v. Fergus, 165 Pa. 310, that after a transfer of an insolvent's property or demand, his debtor cannot, with notice of the insolvency and transfer, buy in the insolvent's obligations and set them off against his own liability.  But beyond this none of the authorities dealing with cross demands covered by the statute seem to go.  And it may be noted that in Nix v. Ellis, 118 Ga. 345 (45 S. E. Repr. 404), it is said that decisions holding claims purchased after knowledge of insolvency unavailable for purposes of set-off are based upon the language of particular statutes.  It would seem to follow that, in order to bring the defense here set up within the prohibition of our authorities, it would have to be considered that the filing of the bill in equity for a receivership was, upon its culmination in the appointment of a receiver, to be treated as a species of transfer, or sequestration, or impounding of the assets and credits of the United States Brick Company as of the date of its filing.  It is not altogether in point to refer to the effect of insolvency or bankruptcy statutes as vesting in the receiver, when appointed, the property and rights of the insolvent by reference to the commencement of the proceeding—even though, as held in Beardslee v. Beaupre, 44 Minn. 1

(46 N. W. Repr. 137), the particular statute contained no express provision so declaring. The necessity of that effect under such statutes is deemed to result from their peculiar scope and purpose. It was pointed out in Nuttall & Co. v. Duryea Power Co., C. P. Berks Co., No. 927, Eq. Dock., 1907, that the jurisdiction exercised by courts of equity in the appointment of receivers is essentially unlike and serves different objects from that created by insolvency and bankrupty statutes, and remains unaffected by these. Nor is it seen how, consistently with the principle that in equity the situation of the parties at the time of the decree, and not at the commencement of the suit, is the criterion: Shaw v. Bayard, 4 Pa. 257, 258–259, the rule contended for by plaintiff's counsel can be regarded as one generally applicable in proceedings of the character here in question. Where upon the filing of the bill and pending its disposition an injunction is granted against the payment of obligations, transfer of securities, etc., such a result may practically ensue, in accordance with the decision in Colt v. Brown, 78 Mass. 233. But there is no allegation here of the interposition of any such restraining order. It is indeed laid down in Nix v. Ellis, 118 Ga. 345 (45 S. E. Repr. 404), that in the absence of a statutory provision on the subject the filing of the petition for the appointment of a receiver closes the right to purchase claims against the insolvent and use them by way of set-off when sued by that officer. The decision does not hinge on that point; for the cross demand antedated the filing of the petition for receivership and the set-off was bound to be allowed whether the principle stated be accepted or not. But aside from this, the principle itself seems to be at variance with the doctrine of our own decisions. It has long been held that in cases of assignments for benefit of creditors, the date of the assignment fixes the rights and status of all parties: Miller's App., 35 Pa. 481. The same rule applies to cases where corporations are dissolved and placed in the hands of receivers, the rights of creditors being fixed as of the

date of the decree: Dean & Son's App., 98 Pa. 101; Oyster v. Short, 177 Pa. 601, 606. And so, according to Cowan v. Plate Glass Co., 184 Pa. 1, where a corporation, upon bill in equity for the appointment of a receiver, is adjudged insolvent and a receiver appointed. It is suggested that in view of Pangburn v. Vault, etc., Co., 205 Pa. 83, it must be considered that Cowan v. Plate Glass Co. would not have been decided as it was, had the fact of the company's insolvency at the time of the giving of the note there in question appeared. But a careful reading of the two cases shows that the distinction between them is plain and broad, and that there is nothing in the latter qualifying the principle declared in the earlier one. In short, the effect of the decisions binding in the disposition of this rule would appear to be that the appointment of the receiver, and not the filing of a bill praying therefor, is to be taken as changing the situation in such manner as to put an end to the right of the insolvent company's debtors to acquire claims against it capable of being set off against its demands when sued for by the receiver. The occurrence of the change at that precise moment is inevitable from the nature and purposes of the decree itself, which, though not investing the receiver with the legal title to the assets of the company: Singerly v. Fox, 75 Pa. 112, yet involves a prohibition of any intermeddling with the affairs of the company: Treat v. Ins. Co., 199 Pa. 326, and puts them in the custody of the law: Cowan v. Plate Glass Co., 184 Pa. 1, 10, the receiver, as its officer, representing both the corporation and its creditors: State Bank v. Kirk, 216 Pa. 452, 456. And it may be noted that the conclusion indicated conforms to the doctrine stated in Gluck & Becker, Recrs. of Corps. (2d ed.), sec. 89.

"The rights of the receiver become fixed at the time of his appointment; the rights of creditors of the corporation represented by him then attach; and it would not be equitable to countenance any subsequent arrangement to give any one of them an undue preference over

the others. Parties must stand or fall by the condition of things in existence at the time of the appointment of the receiver. . . ."

It remains only to notice the contention that the Insolvency Act of June 4, 1901, P. L. 404, forbidding the preference of creditors within four months of the commencement of proceedings in involuntary insolvency ought to operate in denial of the defendant's right to set off the claim acquired by it in December, 1907, the bill for a receivership having been filed August 31, 1907. The argument is that since the statute does not permit a creditor to obtain a preference by payment of his claim within that period, a debtor is not permitted to obtain a like preference by setting off against his liability a claim purchased afterwards with knowledge of the existing insolvency. It is not necessary to consider whether the act of 1901 is suspended by the federal bankruptcy law: Potts v. Mfg. Co., 25 Pa. Superior Ct. 206, or not; Trust Co. v. Comingor, 184 U. S. 18; Randolph v. Scruggs, 190 U. S. 533. It is enough to note that secs. 1 and 2 of the act of 1901, in which the prohibition against preferences appears, speak of transactions between "any person . . . . or corporation, being insolvent or in contemplation of insolvency," and the party with whom such person or corporation is dealing "with a view to give a preference to any creditor," etc. In other words, the thing avoided is unmistakably a preference brought or intended to be brought about by a transaction to which the insolvent is a party either actively or passively: Ferguson v. Greth, C. P. Berks Co., No. 4, Nov. T., 1899, E. D. (aff'd 195 Pa. 272) and authorities there cited. From such a provision it is hardly permissible to infer a legislative intent to affect transactions between creditors and debtors of an insolvent to which the latter is in no wise a party, and where those who are parties to it do not appear to be identified with the insolvent or to owe any duty to its other creditors. That a construction of the act of 1901 as contended for would involve the recognition of an

implied repeal by it of the statute of defalcations as judicially construed (such construction being part of the law itself: Douglass v. Pike County, 101 U. S. 677, 687) in so far as it may become the means of enabling a debtor, by the acquisition and set-off of a claim against the insolvent, indirectly to secure an advantage over other creditors of the same is very manifest. The question of implied repeal as between two statutes is always one of legislative intent: Fraim v. Lancaster County, 171 Pa. 436. That intent, however, must be primarily sought for in the language of the enactment: Reiser v. Sav. Fund Assn., 39 Pa. 137, 144; Leonard v. Com., 112 Pa. 607, 623; and where the language is plain and unambiguous no intent beyond that clearly expressed by it can be attributed to the legislature: Leonard v. Com., 112 Pa. 607, 623; Dame, Seymour & Co.'s App., 62 Pa. 417, 422. It may very well be that a modification of our law of defalcation in the sense contended for would be an improvement and in the line of equity and fair dealing. Yet, as was pointed out in Nix v. Ellis, 118 Ga. 345 (45 S. E. Repr. 404), in discussing a statute forbidding the set-off of cross demands in certain cases:

"It will not do to extend the rule beyond the statute, though the reason thereof may apparently be equally applicable to cases outside of its terms; for what is sufficient to induce a legislature to make law will not authorize courts to change law."

The conclusion which is thus forced upon the court (though, it may be confessed, not without a feeling that the contrary is supported by many obvious considerations of fairness and expediency), is that the affidavit of defense filed in this case is, under our law as it now stands, sufficient to prevent the entry of judgment for plaintiff upon this rule.

The rule to show cause is discharged.

*Error assigned* was order discharging rule for judgment for want of a sufficient affidavit of defense.

*Isaac Hiester*, with him *G. W. Pepper*, for appellant.—
In determining whether a cross demand shall be allowed
as a set-off the court looks to the real ownership of the
claim: Philips v. Bank, 18 Pa. 394; Murray v. William-
son, 3 Binney, 135; Wolfersberger v. Bucher, 10 S. & R.
10; Hibert v. Lang, 165 Pa. 439.

Where a debtor knows that his obligation is not owned
by the original creditor and that the real owner has pro-
ceeded by suit against the original creditor to establish
his title such debtor cannot purchase an obligation of the
original creditor and use it as a set-off against a title so
established: State Bank v. Kirk, 216 Pa. 452; Diven v.
Phelps, 34 Barb. 224; Hillier v. Allegheny County Mut.
Life Ins. Co., 3 Pa. 470; Long v. Penn Ins. Co., 6 Pa. 421;
Green v. Rick, 121 Pa. 130; Colt v. Brown, 78 Mass. 233;
Smith v. Mosby, 56 Tenn. 501; Lanier v. Gayoso Sav.
Inst., 56 Tenn. 506; Nix v. Ellis, 118 Ga. 345 (45 S. E.
Repr. 404).

A director of an insolvent corporation cannot obtain
a preference for his claim against the corporation by
assigning it to a debtor of the corporation pending pro-
ceedings to have a receiver appointed in order that it
may be used as a set-off: Pangburn v. American Vault,
etc., Co., 205 Pa. 83.

*Phillip S. Zieber*, of *Snyder & Zieber*, for appellees.

PER CURIAM, April 25, 1910:

These appeals involve the same question and were
argued together. The judgments are affirmed for the
reasons stated in the opinion of the learned president
judge of the common pleas, discharging the rule for
judgment in No. 359.