## STATE OF NEW JERSEY v. LOVELL.

### (Circuit Court of Appeals, Third Circuit. June 13, 1910.)

### No. 59.

BANKRUPTCY (§ 346*)—DEBTS ENTITLED TO PRIORITY—COST OF PRESERVING ESTATE—TAXES.

In the distribution of the estate of a bankrupt, the actual and necessary cost of preserving the estate subsequent to filing the petition, which is an expense necessary to enable the court to exercise its jurisdiction, is entitled to priority of payment over taxes due the state.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 535; Dec. Dig. § 346.*]

Appeal from the District Court of the United States for the District of New Jersey.

In the matter of the Halsey Electric Generator Company, bankrupt. From an order of the District Court (175 Fed. 825), the State of New Jersey appeals. Affirmed.

Edmund Wilson, Atty. Gen. of New Jersey.

Howard H. Williams, for trustee.

Before BUFFINGTON, Circuit Judge, and BRADFORD and CROSS, District Judges.

BUFFINGTON, Circuit Judge. In the court below the Halsey Electric Generator Company, a corporation of the state of New Jersey, was adjudged bankrupt. Its property was covered by fixed liens, and all moneys realized from its unincumbered effects were required to pay expenses incurred by the receiver in preserving its property, pending litigation over the question of adjudication. The state of New Jersey contended that all of said funds should be applied to pay a franchise tax it had imposed on such corporations. The court below, however, ordered the fund be applied "to pay the actual and necessary cost of preserving the estate subsequent to filing the petition." Thereupon the state appealed from such order to this court.

The question is of grave import, for it is clear that, if the administration of law is to be respected, a court, without power or means to pay for carrying out its orders, must refuse to make such orders; otherwise its helpless jurisdiction will incur merited contempt. By Const. art. 1, § 8, "Congress shall have power," etc., to "establish * * * uniform laws on the subject of bankruptcy throughout the United States." Now as this power, when exercised, suspends state action (Sturges v. Crowninshield, 17 U. S. 191, 4 L. Ed. 529), it would seem that Congress, in passing this bankruptcy act, intended the federal courts should exercise exclusive jurisdiction in bankrupt matters. Is it then possible that Congress, by section 2 of the bankrupt act (Act July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3420]), invested the District Courts "with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * to appoint receivers or the marshal,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

* * * in case the court shall find it absolutely necessary for the preservation of estates, to take charge of the property of bankrupts," and, after conferring such enabling power, meant by section 64 to disable the courts from exercising it by depriving them, as is here sought to be done, of the self-respecting power to pay those it had employed to preserve the estate? Indeed, that is a contradiction and construction not to be tolerated unless under stress of impelling necessity. Section 64 of the act, which is claimed to do so, is as follows:

"(a) The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality in advance of the payment of dividends to creditors, and upon filing the receipt of the proper public officers for such payment he shall be credited with the amount thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court. (b) The debts to have priority, except as herein provided, and to be paid in full out of bankrupt estates, and the order of payment shall be (1) the actual and necessary cost of preserving the estate, subsequent to filing the petition; (2) the filing fees paid by creditors in involuntary cases; (3) the cost of administration, including the fees and mileage payable to witnesses as now or hereafter provided by the laws of the United States, and one reasonable attorney's fee, for the professional services actually rendered, irrespective of the number of attorneys employed, to the petitioning creditors in involuntary cases, to the bankrupt in involuntary cases while performing the duties herein prescribed, and to the bankrupt in voluntary cases, as the court may allow; (4) wages due to workmen, clerks, traveling or city salesmen, or servants which have been earned within three months before the date of commencement of proceedings, not to exceed three hundred dollars to each claimant; and (5) debts owing to any person who by the laws of the states or the United States is entitled to priority. * * * "

Now, while the relative order in which subdivisions "a" and "b" are placed is not happy, and indeed tends to mislead, yet the general intent of the section is clear. In subdivision "b" we find the general scheme of awarding priority in advance of dividend creditors. That subdivision makes provision for paying such costs, fees, and liens as are therein provided, and if there are no outstanding taxes the fund is then paid to creditors. But before paying creditors, subdivision "a" intervenes and makes provision for what, if omitted, has often proved a hardship, if not indeed an abuse in the settlement of decedent and insolvent estates, viz., delay in payment of taxes. Tax collectors whose power to distrain lapsed when the estate passed into the custody of the law, or who were left to come in as general creditors, were subjected to trying delays. Obviously subdivision "a" meant that this delay should not occur, and therefore provided that, "in advance of payment of dividends to creditors," "the court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, state, county, district or municipality," and, to prevent delay from questions concerning such taxes, it provided, "in case any question arises as to the amount or legality of any such tax, the same shall be heard and determined by the court." And yet in case the court had to take testimony, or order a referee to determine the legality of such tax, the adjudged tax would, under the construction here contended for, absorb the whole fund and leave unpaid the agency by which its payment was effected. Now, whether the "creditors" referred to in the phrase, "in advance of the payment of divi-

dends to creditors," places the payment of taxes ahead of dividend creditors alone, or places it also ahead of those creditors who under subdivisions 4 and 5 of clause "b" are paid in full, is a question not before us. It suffices to say that on the question that is before us, namely, whether the taxes of a state are, under clause "a," given priority over "the actual and necessary cost of preserving the estate subsequent to the filing of the petition," we are clear they are not.

The appeal is therefore dismissed, and the decree of the court below affirmed.