# Blum Brothers v. Girard National Bank, et al., Appellants.

*Corporations—Receivers—Actions by receivers—Bank deposits —Set-off—Contracts—Construction—Promissory notes.*

1. When receivers are appointed for an insolvent corporation, the rights of creditors are fixed by the facts as they then stand, and these rights cannot be enlarged by subsequent events.

2. In such case the fact that the corporation was not definitely known to be insolvent at the time the receivers were appointed, and that they were given authority to conduct the business as a going concern and to apply the money which should come into their

hands from the sale of the whole or a part of the property, does not change the rule where the corporation was afterwards found to be insolvent at ·the time the receivers were appointed, and in such case banks who hold deposits of the corporation at the date of the appointment of the receivers cannot set off such deposits against the amount of notes of the corporation held by them, which were discounted before the appointment of the receivers, but did not mature until afterwards.

3. In such case the claim of certain of defendants to an equitable lien on the deposits created by virtue of an alleged oral agreement that the corporation should always maintain in its deposit account a balance equal to at least twenty per cent. of the amount of its discounted notes, was properly disallowed, where it did not appear to have been agreed that the bank should have an option to appropriate the deposits for the payment of the discounted notes, or had attempted to make such an appropriation before the appointment of the receivers, or that the bank under any circumstances should have a right to hold such deposits, or any part thereof, as collateral for discounted notes, or that any penalty should be paid for the failure of the corporation to keep twenty per cent. of its discounted notes on deposit with the bank.

Argued Jan. 4, 1915. Appeals, Nos. 110, 112, 150, 170, 172, Jan. T., 1914, by defendants, from judgment of C. P. No. 5, Philadelphia Co., Sept. T., 1913, Nos. 1857, 1861, 1859, 1858, 1860, on verdicts for plaintiff in cases of Blum Brothers, Incorporated, in the hands of Edward Wolf and Willard P. Barrows, Receivers, v. The Girard National Bank of Philadelphia; Blum Brothers, Incorporated, v. Franklin National Bank; Blum Brothers, Incorporated, v. Philadelphia National Bank; Blum Brothers, Incorporated, v. Bank of North America; Blum Brothers, Incorporated, v. Fourth Street National Bank. Before BROWN, C. J., POTTER, ELKIN, STEWART, MOSCH-ZISKER and FRAZER, JJ. Affirmed.

Assumpsit on promissory notes.

Rule for judgment for want of a sufficient affidavit of defense. Before RALSTON, J.

The opinion of the Supreme Court states the facts.

The court made absolute· the rule for judgment for

want of a sufficient affidavit of defense. Defendants appealed.

*Error assigned* was the order of the court.

*John G. Johnson,* with him *James Wilson Bayard,* for the Bank of North America, appellant.

*Arthur G. Dickson* filed a paper book for the Fourth Street National Bank, appellant.

*W. B. Bodine, Jr.,* and *G. W. Pepper,* filed a paper book for the Philadelphia National Bank, appellant.

*Harold Evans* and *Thomas DeWitt Cuyler,* filed a paper book for the Franklin National Bank, appellant.

*Percy C. Madeira, Jr., R. Stuart Smith* and *Charles E. Morgan,* filed a paper book for the Girard National Bank of Philadelphia, appellant.

*Percival H. Granger,* with him *J. Howard Reber,* for appellees.

Opinion by Mr. Justice Moschzisker, February 15, 1915:

Five judgments were entered against several national banks, each for want of a sufficient affidavit of defense, and the respective defendants have appealed. The appeals were argued together, and we shall dispose of them in one opinion.

It appears that on July 31, 1913, Edward Wolf and Willard P. Barrows were appointed receivers for Blum Brothers, a trading company incorporated under the laws of New Jersey, doing business at Philadelphia. The bill in equity which led to the appointment of the receivers was filed by stockholders, and averred that the corporation in question had issued a large number of

promissory notes which had been discounted by banks; that it was unable to meet these notes "by reason of the stringency in the money market"; that if suit were brought upon the notes the assets of the company would be sacrificed "to the great loss and damage of both the creditors...... and stockholders," and that "in order to conserve the assets of said corporation and prevent a sacrifice thereof, and to enable said defendant company to adjust its financial affairs so that all of its obligations may be fully met," receivers should be appointed. The bill prayed that the receivers be authorized to take possession of all the property of the company, to conduct and preserve the business "as a going concern," and to apply the moneys which should come into their hands "by reason of the conduct of said business or the collection of debts, or the sale of the whole or a part of the property, etc."; and the decree appointing them authorized the receivers to take possession of all the effects and property of the corporation, to conduct the business "as a going concern," and "to apply the moneys which shall come into their hands by reason of the conduct of said business, or the collection of debts, or the sale of the whole or a part of the property, to the necessary expenses of carrying out the duties of the trust......" In addition to those already noted, the bill contained another averment to the effect that the corporation was "possessed of assets far in excess of its liabilities"; but when the receivers took charge they found the company insolvent.

On the day Blum Brothers went into the hands of the receivers, the corporation had a balance to its credit in each of the defendant banks. The several appellants refused to pay over these balances, upon the ground that at the time of the appointment of the receivers each of the banks held notes discounted for the Blum Brothers' corporation in amounts far exceeding the balance to its credit. None of the notes was due when the receivers were appointed, but in each instance notes subsequently

matured, prior to the date of the suits against the respective banks, in amounts sufficient more than to offset the balance to the credit of Blum Brothers. The plaintiff receivers averred in the suits to recover these bank balances that the Blum Brothers' corporation was insolvent at the time of their appointment, and the several affidavits of defense either expressly averred, admitted or failed to deny this condition of insolvency. When the cases were presented to this court, no contention was made that the corporation was other than insolvent at the time of the appointment of the receivers; but it was seriously contended that, since the original bill averred assets in excess of liabilities, and since the receivers were not appointed for the express purpose of winding up the Blum Brothers' Company as an insolvent corporation, but were expressly authorized to conduct it as a going concern, their appointment could not be taken as adversely affecting the rights of the several appellants to set off the notes in their possession which were matured at the time the suits at bar were instituted.

The court below took the view that, the fact of the corporation's insolvency at the time of the appointment of the receivers being conceded, the receivership could, and should be treated as a general one for the benefit of those ultimately entitled to the assets, including creditors, with a grant of temporary authority to the receivers to conduct the business as a going concern, and not as a temporary receivership simply to carry on the business for the stockholders in the place of the general officers of the corporation—saying, in an opinion filed in one of the cases, "In the affidavit of defense the defendant expressly averred on information and belief 'that the plaintiff, Blum Brothers, Inc., is in fact insolvent and has been' since a time prior to the appointment of the receivers. On the hearing of a rule for judgment for want of a sufficient affidavit of defense, this averment must be taken as being true, and its apparent

truthfulness is not necessarily affected by any averment in the bill in equity filed at the time the receivers were appointed. We hold that it is well settled law in Pennsylvania that in the case of an insolvent corporation, the rights of the parties are fixed as of the date of the appointment of the receivers......The case of Chipman v. The Ninth National Bank, 120 Pa. 86, controls the present contention. In this case a rule for judgment was discharged by the court and on appeal the judgment of the lower court was reversed and judgment entered for the plaintiff, the court holding that 'in an action by an assignee for the benefit of creditors to recover from a bank a balance to the credit and subject to the check of the assignor at the date of the assignment, the bank cannot set off notes or drafts endorsed by and discounted for the assignor before, but maturing after the assignment.' This case was approved in Oyster v. Short, 177 Pa. 589, and the principle was affirmed in United States Brick Company v. Reading Shale Brick Company, 228 Pa. 81. It therefore appearing that at the date when the receivers were appointed, namely, July 31, 1913, Blum Brothers, Inc., had a deposit in the defendant bank, and that on that date none of the notes of Blum Brothers, Inc., which had been discounted by defendant bank were due, it follows that the bank is bound to turn over the balance in its hands on July 31, 1913, to the receivers. It cannot set off the notes in its hands which became due after the appointment of the receivers but must present its claim to the estate and share in the proceeds with the other creditors."

After considering the arguments presented by the learned counsel for the several appellants, we are not convinced of error in the view of the court below. It is true, we did say in Duplex Printing Press Co. v. Clipper Pub. Co., 213 Pa. 207, 211, so largely relied upon by the appellants, that the authority of a receiver depended upon the purpose of his appointment and the extent of the powers conferred by the decree appointing him;

but here, while the bill under which the receivers were appointed contained an averment that the assets of Blum Brothers were "far in excess of the amount of its liabilities," yet it was immediately thereafter averred that should these assets be presently realized upon it would result in a great loss to the creditors of the corporation, and that a receivership was necessary to enable the company fully to meet its obligations; which plainly meant, and must have indicated to all interested parties, that under the then existing conditions, despite the assertion of assets in excess of liabilities, Blum Brothers, Incorporated, possibly was insolvent, and that it well might be necessary for the receivers eventually to realize on the assets of the corporation for the benefit of its creditors; in fact, although the decree authorized the receivers to conduct the business, "as a going concern," yet, it also empowered them to sell any part or all of the assets of the company, and in phrasing the decree as it did the court below may well have thought that, should the corporation prove insolvent, a better price could be realized by a sale of its entire assets and business as a going concern than otherwise. In this connection, it must be borne in mind that, since Blum Brothers was a foreign corporation, it could not be formally dissolved by a Pennsylvania court, and hence no decree could be entered for that purpose. On the whole, taking into consideration all the averments of the bill and the decree entered thereon, we are convinced that the court below did not err in treating this case as a general receivership for an insolvent trading company with temporary authority in the receivers to conduct the business as a going concern, and thereby avoiding a preference in favor of the particular defendants at bar to the prejudice of the other creditors.

Undoubtedly, had the averments of the bill presented directly the issue of solvency or insolvency, and had the court appointed receivers pending the determination of that issue, with the result of a formal adjudication of

insolvency, in adjusting the rights of creditors, the corporation would have been treated as though insolvent from the beginning; therefore, here, with insolvency at the date of the appointment of the receivers either expressly or impliedly admitted by the appellants, for the purpose of these cases, the court below was justified in treating that as an accomplished fact which would have been done had application been made to it for the purpose, i. e., a formal adjudication of the insolvency of the corporation with an appropriate formal direction to realize upon the assets for the benefit of creditors and others ultimately entitled. The defendants at bar were in nowise harmed by the course pursued, they at no time changed their position or refrained from so doing to their prejudice, and they stood just where they would have stood had insolvency been expressly averred in the original bill, followed by the appointment of the receivers on that basis; to give the appellants a preference now would not be right or just to the other creditors, nor is it required by anything in our decisions.

No case has been called to our attention whose facts cannot be distinguished from those at bar; but many of the cases cited are at least enlightening from the standpoint of the principles involved. It is too late at this day to challenge the general authority of a Pennsylvania court in equity to appoint receivers for a financially embarrassed corporation. The right to appoint receivers has belonged to Courts of Chancery from "a very early time" (Power v. Grogan, 232 Pa. 387, 394); with us it has been uniformly exercised in cases of embarrassed corporations, and this course has had statutory authority, at least, since the Act of June 16, 1836, P. L. 789 (Sec. 13, Par. V), which confers on the Courts of Common Pleas the supervision and control over corporations. Of course, a receiver will not be appointed or an injunction granted for the mere purpose of delaying a creditor in the pursuit of an action to recover a debt, when it is apparent that there is nothing more

in the case than a desire to accomplish that end, or when no good, general purpose would be served by the interference of a Court of Equity—in such instances all parties are left to their ordinary remedies at law (see Pairpoint Mfg. Co. v. Philadelphia Optical & Watch Co., 161 Pa. 17; Lowry v. Philadelphia Optical & Watch Co., 161 Pa. 123; Bell v. Wood, 181 Pa. 175); but many of our decisions recognize the right of a Court of Equity, in a proper case, to appoint receivers for a financially embarrassed trading corporation and, if it proves insolvent, to distribute the assets for the benefit of creditors and others ultimately entitled thereto (see Cowan v. Penna. Plate Glass Co., infra; United States Brick Co. v. Reading Shale Brick Co., supra et infra, and cases cited on other points in present opinion; also see Tenth Nat. Bk. of Philadelphia v. Smith Construction Co., 242 Pa. 269).

While receivers do not acquire the legal title to the' assets of an insolvent corporation, yet, they are clothed with a kind of equitable title to be worked out under the order and direction of the appointing court; the effect of their appointment is to remove those in charge of the management of the corporation and to place the receivers in possession and control of its business and assets, as custodians for the benefit of creditors and others ultimately entitled (Tenth Nat. Bk. v. Construction Co., 227 Pa. 354, 362; United States Brick Co. v. Reading Shale Brick Co., 228 Pa. 81, 85; Com. v. Overholt, 23 Pa. Superior Ct. 199, 201; Bispham's Principles of Equity, Sec. 579). When receivers are appointed for an insolvent corporation the rights of creditors are fixed by the facts as they then stand, and these rights cannot be enlarged by subsequent events (such as the maturing of the notes held by the banks in this case, after the appointment of the present receivers), for when the receivers are designated the assets of the corporation pass into the custody of the law to the same extent as in the case of a decedent's estate. In such instances it has been

uniformly held that, if the decedent was insolvent when his estate passed into the hands of the law, a debt owing by him at the time of his death, but not then due, cannot be set off against a debt then actually due to him, and it has been particularly held that, when the decedent was the endorsee on notes, discounted for his benefit at a bank, which did not grow due till after his death, the bank was not entitled to retain a deposit of money, standing on its books to his credit at the time of his death, as a set-off against his liability on the notes (see Farmers' & Mechanics' Bk. App., 48 Pa. 57; Bosler v. Exchange Bank, 4 Pa. 32; Kensington Nat. Bk. v. Shoemaker, 11 W. N. C. 215); although recognized in Hicks v. National Bank of Northern Liberties, 168 Pa. 638, 641, it is not necessary, however to depend upon this analogy in the cases at bar, for in Chipman v. Ninth Nat. Bk., 120 Pa. 86, we ruled, in an action by an assignee for the benefit of creditors to recover from a bank a balance standing to the credit of the assignor at the date of the assignment, that the bank could not set off notes endorsed by and discounted for the assignor before, but not maturing until after, the date of the assignment, and the principle of this authority—that the date of the assignment fixes the rights and status of all parties— was followed and applied to a receivership in Oyster v. Short, supra, p. 589, 593, and again in United States Brick Co. v. Reading Shale Brick Co., supra, p. 86; (also see Gehr v. Mont Alto Iron Co., 174 Pa. 430, 434, Cowan v. Penna. Plate Glass Co., 184 Pa. 1, (at end of p. 11); and for rulings that a receiver represents the creditors, see Duplex Printing Press Co. v. Clipper Pub. Co., supra, p. 211, 212; Cushing v. Perot, 175 Pa. 66, 76, 77; State Bank of Pittsburgh v. Kirk, 216 Pa. 452, 455). The appellants cite numerous authorities to show that the appointment of a receiver does not necessarily interfere with the rights of creditors. It is true, where the particular facts justify such relief, a temporary receiver may be appointed for a solvent trading corporation

without in any manner, or to any extent, affecting the title to its property, leaving the corporation subject to suits and defenses the same as before the receivership (See Mr. Justice DEAN'S discussion of this subject in Cowan v. Exchange Bank, supra, at p. 9); but, for the reasons already stated, the present is not an instance of that character, and the authorities ruling that class of cases are not controlling here.

Before passing to the next branch of our inquiry, it remains but to say that we are not impressed with the appellants' contention that the creditors had no interest in, and could not be affected by, the receivership proceedings in the present case because the stockholders who filed the bill could have discontinued their suit at any time. A sufficient answer to this contention is that it is not a correct statement of law to say the plaintiffs, of their own volition, could have discontinued the proceedings after the court had, by the appointment of the receivers, taken control of the assets of the corporation. In practice, cases are often marked "settled and discontinued" without leave of court, and when this is not questioned permission of the court is presumed; but a discontinuance is always subject to the supervision and control of the court, and, as a rule, leave to discontinue a proceeding will not be granted a plaintiff when it will work to the disadvantage of other interested parties: Com. v. Magee (No. 1), 224 Pa. 166, 168; Consolidated Nat. Bk. v. McManus, 217, Pa. 190.

Only one other matter calls for notice: two of the banks set up the defense of a special lien on the deposits in their possession at the time of the appointment of the receivers, alleging that this lien grew out of an "oral arrangement" that Blum Brothers, Incorporated, should always maintain in its deposit account a balance equal to at least twenty per cent. of the amount of its discounted notes. As to this defense, after selecting the affidavit which from the standpoint of the appellants best avers the arrangement in question, we are of opin-

ion that it fails to show enough to make a case for the jury. There is no averment that the arrangement between Blum Brothers and the bank provided that the latter should have even an option to appropriate the deposits to the credit of the former for the payment of its discounted notes (as in Corn Exchange Nat. Bank v. Locher, 151 Fed. 764, where Judge DALLAS, speaking for the United States Circuit Court, decided the bank had no lien), neither does it appear that the appellant had attempted to make such an appropriation before the appointment of the receivers, nor is there any averment of an express agreement, much less a contract, that the bank, under any circumstances, should have a lien on, or a right to hold, such deposits or any part thereof, as collateral for discounted notes; furthermore, it does not appear that at the time of the making of the so-called "oral arrangement" there was any agreement as to the result, or penalty, which would follow in case the borrowing corporation failed to keep twenty per cent. of the amount of its discounted notes on deposit with the bank; and it is quite apparent from the facts averred in the affidavits of defense that, at the time of the appointment of the receivers, the deposits in the particular bank account now under consideration did not equal more than ten per cent. of the outstanding notes discounted by that bank. The "oral arrangement" between Blum Brothers and the bank was made nearly five years before any of the present notes were discounted, and no time seems to have been mentioned as to its duration. Upon a failure of the depositor to keep his balance up to the required amount the bank might have refused further discounts, but it is clear that the arrangement, as averred, did not constitute an equitable assignment of Blum Brothers' deposits, nor did it create a lien thereon in favor of the bank. The case at bar differs on its facts from Thompson v. Hazelwood Savings & Trust Co., 234 Pa. 452, so materially that one in no sense rules

the other, and this is true also of the other cases cited by the appellants.

The assignments of error are all overruled and the several judgments are affirmed.