## Gordon, Secretary of Banking, v. Buckwalter

*Morris Gerber*, for plaintiff.
*J. Stroud Weber*, for defendant.

CORSON, J., July 10, 1936.—Plaintiff, as Secretary of Banking in possession of the Royersford Trust Company, brought suit against above defendant to recover the unpaid balance due upon stock of the Royersford Trust Company, owned by defendant. To this suit defendant has filed an affidavit of defense denying liability and

setting forth a counterclaim in the amount of $2,303.53. This counterclaim is based upon an agreement dated March 19, 1931, and entered into between certain individual first parties, of whom defendant was one, and William D. Gordon, the acting Secretary of Banking of this Commonwealth. This agreement is fully set forth as exhibit A, attached to the affidavit of defense.

Plaintiff has replied to the counterclaim, contending, first, that the counterclaim fails, as a matter of law, to establish any claim against plaintiff. The second and third contentions of plaintiff are based upon the failure of defendant to assert his claim within the provisions of the Department of Banking Code of May 15, 1933, P. L. 565, and that, under the conditions as then existed in the present case, a stockholder cannot assert a counterclaim which is in the nature of a set-off against a corporation.

We feel that the first contention is sufficient to justify a finding in favor of plaintiff as to the counterclaim.

It is apparent from a reading of the agreement that the examiners of the Banking Department, prior to March 19, 1931, discovered an impairment of the surplus of the Royersford Trust Company in the amount of nearly $90,000. The department thereupon notified the trust company to secure and make good such impairment. Certain individuals, stockholders of the corporation, of whom defendant was one, thereupon signified to the Secretary of Banking their desire to secure the trust company against loss by reason of the impairment and their willingness to pledge with the Secretary of Banking for the benefit of the trust company various securities as collateral for the securing of such impairment. A list of the securities pledged by each individual is listed and made part of the agreement.

Under the agreement, the Secretary of Banking was to hold the securities or the proceeds thereof in trust for making good the impairment of the surplus of the said trust company or of any additional impairment arising from any cause whatsoever.

It is the contention of defendant that there was a contemporaneous parol agreement under which, in consideration of the deposit of these securities, the trust company was to be allowed to continue using its stationery with the full amount of surplus printed thereon. After the execution of this agreement, and deposit of the securities, the trust company continued to function until June 10, 1932, when it was placed in the possession of the Secretary of Banking, and after a full examination of the assets and liabilities, the secretary decided that the trust company should be liquidated.

Defendant does not deny that after the taking over of the trust company by the secretary the trust company was found to be insolvent and unable to pay the claims of its depositors in full.

After June 10, 1932, the secretary sold defendant's securities, receiving therefor the sum claimed by defendant in his counterclaim. No complaint is made by defendant as to the manner in which the securities were sold or the price received for them. It is the contention of defendant, however, that since the securities were not sold for the benefit of the corporation prior to June 10, 1932, they could not be sold thereafter, and if sold the proceeds must be found to be held by the secretary in trust, not for the trust company, but for defendant. With this contention we cannot agree. In theory, at least, we must assume that the trust company was solvent up until it was placed in the possession of the secretary on June 10, 1932.

While it is true that the rights of the parties were fixed as of the date of taking over by the secretary, yet that does not mean that the rights existing at that time cannot be enforced by an appropriate means at a later date.

Defendant would seem to contend that the Secretary of Banking, in taking possession of the trust company, violated the agreement with defendant and his associates. There is not a word, however, in the pleadings upon which to base such a contention.

The only one really interested in the securities is the banking corporation itself. The Secretary of Banking held the securities, not for himself, but for the benefit of the trust company to make good any impairment in its surplus. When the Secretary of Banking sold the securities as an officer of the Commonwealth acting as receiver of the closed trust company, there is a presumption of regularity in his favor. There is a presumption that such securities were sold for the purpose set forth in the agreement, which was to make good any impairment in the surplus. The fact that such an impairment existed is not denied by defendant. There is no denial that the trust company was insolvent and in receivership at the time such securities were sold. We feel that upon the pleadings the secretary was not only within his rights but was merely performing the duty which he owed to the depositors of the defunct trust company when he sold defendant's securities.

Upon this view of the case, it is unnecessary to discuss the other questions of law raised by plaintiff. In support of such contentions, however, we may cite Royersford Trust Company's Case (No. 1), 318 Pa. 81, 83; No. 90 Building & Loan Assn. v. Allesandroni et al., 317 Pa. 30, 32.

Upon the question of whether or not a set-off can be allowed in a suit of this nature, see Macungie Savings Bank, to use, v. Bastian, 10 W. N. C. 71; United States Brick Co., to use, v. Middletown Shale Brick Co., 228 Pa. 81, 84.

And now, July 10, 1936, for the reasons given, the questions of law raised in plaintiff's reply to defendant's counterclaim are decided in favor of plaintiff, and, the court being of the opinion that this decision upon such questions of law disposes of the entire counterclaim, judgment is directed to be entered in favor of plaintiff and against defendant upon the counterclaim. An exception is allowed to defendant.