In re PRESSED STEEL CAR CO. OF NEW JERSEY.*

No. 6585.

Circuit Court of Appeals, Third Circuit.

Nov. 5, 1938.

*Writ of certiorari denied 59 S.Ct. 589, 83 L.Ed. ——.

David T. Wilentz, Atty. Gen., of New Jersey, and John E. Evans, Sr., and Margiotti, Pugliese, Evans & Buckley, all of Pittsburgh, Pa., for the State of New Jersey.

Earl F. Reed, Charles M. Thorp, Jr., William C. O'Neil, and Thorp, Bostwick, Reed & Armstrong, all of Pittsburgh, Pa., for appellees, trustees of debtor.

Before BUFFINGTON and BIGGS, Circuit Judges, and DICKINSON, District Judge.

BIGGS, Circuit Judge.

The State of New Jersey seeks to recover in the pending proceedings corporation franchise taxes for the years 1933, 1934 and 1935 [1] imposed by the laws of New Jersey (Pamphlet Laws 1884, Chapter 159, p. 232; 1919, Chapter 195, p. 431; 1931, Chapter 102, p. 171; 1932, Chapter 98, p. 168) upon the debtor, Pressed Steel Car Company, a corporation of the State of New Jersey, all of the tangible assets of which were within the Commonwealth of Pennsylvania.

Receivers were appointed for the corporation upon May 10, 1933, as the result of a bill in equity filed in the court below. The receivers were authorized to carry on the business of the corporation [2] and did so until June 13, 1934, at which time a voluntary petition was filed by the debtor pursuant to the provisions of Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. This petition was approved by the court below upon the same day that it was filed and two of the equity receivers were appointed temporary trustees for the debtor [3] with all the powers theretofore possessed and enjoyed by the equity receivers. The trustees specifically were authorized by order of the court to carry on the business of the debtor. They did so until July 27, 1936, when the learned District Judge entered an order ap-

---

[1] The respective amounts due, exclusive of interest are: 1933, $6,315.37; 1934, $6,331.43; and 1935, $6,332.75.

[2] The decree appointing receivers provides, inter alia, that they are appointed receivers " * * * of all the property of the said defendant, real, personal and mixed, of whatsoever kind and description and wheresoever situated, including its merchandise, stocks and bonds, choses in action, bills and accounts receivable, cash in hand and in bank, and all its easements, franchises, rights, privileges and interest, and all of the earnings, rents, issues, profits, revenues and income thereof and every part thereof."

The decree also provides that the receivers " * * * be and they are hereby authorized immediately to take possession of all the property, business and assets above described or referred to, and until further order of this Court, said receivers shall manage, control and preserve the said property and assets in proper condition and repair and make such payments and disbursements as may be necessary or proper for so doing, and shall report their actions to this Court from time to time."

The order further provides that " * * * until the further order of this Court, the said receivers be and they are hereby authorized to carry on the business of the defendant * * *".

[3] The decree appointing permanent trustees provides, inter alia, that the trustees are appointed permanent trustees " * * * of all the property of the Pressed Steel Car Company, real, personal and mixed, of whatsoever kind and description and wheresoever situated, including its merchandise, stocks and bonds, choses in action, bills and accounts receivable, cash in hand and in bank, and of its easements, franchises, rights, privileges and interest, and all of the earnings, rents, issues, profits, revenues and income thereof, and every part thereof."

The decree further provides that the trustees " * * * be and they are hereby authorized immediately to take possession of all the property, business and assets above described or referred to, and until further order of this Court said Trustees shall manage, control and preserve the said property and assets in proper condition and repair, and make such payments and disbursements as may be necessary or proper for so doing, and shall report their actions to this Court from time to time."

The decree further provides "That until the further order of this Court the said Trustees be and they are hereby authorized to carry on the business of the debtor corporation, to continue the manufacture and sale of its products, dispose of its stock on hand, to make such purchases as may be necessary to enable it to carry on its business, complete such contracts and orders of the debtor corporation as in the judgment of the Trustees may be advantageous and for the best interest of the debtor corporation and its creditors and stockholders, and to make, accept and carry out such new contracts and orders as in their judgment may be advisable * * *."

proving a plan of reorganization whereby the assets of the debtor were transferred to a new corporation formed for that purpose.

In view of the foregoing it will be apparent that the obligation of the 1933 taxes arose prior to the receivership; the obligation for the 1934 taxes arose after the inception of the receivership and that of the 1935 taxes after the commencement of the proceedings under Section 77B. Claims were filed by the State of New Jersey for these taxes in the proceedings at bar and were disallowed. From such disallowance the appeal is taken.

The plan of reorganization provides that the "Current liabilities of the Receivers and Trustees * * *" to the extent not paid by the trustees, shall be paid or assumed by the new company. The order confirming the plan of reorganization requires this disposition of the current liabilities of the receivers and trustees.

We think that the questions presented by the controversy at bar may be disposed of most expeditiously by considering first the status of the claim for franchise taxes for the year 1934 which arose during the period of the receivership. We think that it is obvious that if the franchise tax for 1934 enjoys a status which will require its payment, it enjoys such as an expense of administration incurred by the receivers. If it is an expense of administration it fits within the category of the current liabilities of the receivers referred to as payable in the plan of reorganization and there is no necessity of ascertaining its position in the hierarchy of payment and priority as a claim under the provisions of the Bankruptcy Act as amended by the provisions of Section 77B.

We must determine therefore whether the 1934 franchise tax must be deemed to constitute an expense of administration of the receivership estate. Though the answer to this question turns in its final analysis upon the nature of the Pennsylvania proceedings, we think that it would be helpful to consider first authorities generally upon this question.

Speaking generally, when a franchise tax is construed as a tax upon the privilege of exercising the corporate franchise, viz., the right "to do" business as a corporation, franchise taxes arising after receivership are deemed to be payable by the receivers if the receivers have continued the business of the corporation. People of New York v. Hopkins, 2 Cir., 18 F.2d 731, 733; Bright v. Arkansas, 8 Cir., 249 F. 950; McFarland v. Hurley, 5 Cir., 286 F. 365; Ohio v. Harris, 6 Cir., 229 F. 892; Coy v. Title Guarantee & Trust Co., D.C., 212 F. 520. The cases cited deal with liability of receivers for franchise taxes of domestic corporations operating in what may be termed domestic receiverships.

There are authorities, however, to the effect that a franchise tax is payable as an expense of administration when the receivers have operated the business of the corporation, even though the corporation is of a state other than that in which the receivership takes place. In New York Trust Co. v. Island Oil & Transport Corporation, 7 F.2d 416, franchise taxes of the State of Virginia were ordered paid in receivership proceedings in the District Court for the Southern District of New York. In the cited case Judge Knox stated: "But the equities of the situation appeal to me as demanding the payment of the taxes. By this I mean that, in administering the estate, the receivers have carried on the business of the corporation. In so doing, they have exercised its right to existence, conferred upon it by the commonwealth of Virginia. Why should the price of that right to existence, as determined by the state, not be paid?" The decision of Judge Knox was affirmed by the Circuit Court of Appeals for the Second Circuit in 11 F.2d 698, though upon the ground that it was within the discretion of the District Judge to order the payment in question. A statement similar in substance to that of Judge Knox is made by Circuit Judge Chase in his opinion in Re International Match Corporation, 2 Cir., 79 F.2d 203, 204. See, also, People of New York v. Hopkins, supra.

In Michigan v. Michigan Trust Co., 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136, Mr. Justice Cardozo, delivering the opinion of the Supreme Court, while stating that the Supreme Court of Michigan by its decision in Re Detroit Properties Corporation, 254 Mich. 523, 236 N.W. 850, had held that a receiver appointed for a Michigan corporation by a Michigan court was by the order appointing him simply nominated as the person who was to exercise the " 'powers belonging to the corporation by legislative grant' ", also said, "To protect through a receiver the enjoyment of the corporate privilege and then to use the appointment as a barrier to the collection of the tax that should accompany enjoyment would be an injustice to the state and a reproach to equity." [pages 514, 515.]

■ The franchise taxes of the State of New Jersey were defined by the Supreme Court of the United States in New Jersey v. Anderson, 203 U.S. 483, at page 490, 27 S. Ct. 137, at page 139, 51 L.Ed. 284, as "* * * a tax imposed upon the right of the corporation to continue to be a corporation, with power to exercise its corporate franchises, based upon the amount of its capital stock issued and outstanding." In Re United States Car Co., 60 N.J.Eq. 514, 43 A. 673, it was held that [page 674] "Although the statute designates an imposition of this kind as a license fee or franchise tax, it plainly is not a tax upon corporate franchises. In fact, it is not, strictly speaking, a tax at all, nor has it the elements of one. It is in reality an arbitrary imposition laid upon the corporation, without regard to the value of its property or of its franchises, and without regard to whether it exercises the latter or not, solely as a condition of its continued existence." It seems to us that a fair interpretation of the decisions cited requires a holding that the franchise taxes of the State of New Jersey are imposed upon the corporation in return for its privilege "to be" a corporation, but we can perceive no substantial difference in so far as an obligation to pay franchise taxes is concerned between a right conferred upon a corporation by a franchise "to be" or a franchise "to do". It is obvious that if receivers are to carry on the business of the corporation under its charter, they must maintain the right of the corporation "to be" if they are "to do" its business. The distinction, which is largely a distinction without a difference, disappears.

■ To return now to the law of Pennsylvania, we are of the opinion that a receiver conducting the corporate business must make use of the corporate franchise. Legal title to all assets remains in the corporation, though the property is in the custody of the court. The receiver has possession of the property subject to the orders of the court. Singerly v. Fox, 75 Pa. 112; United States Brick Co. v. Brick Co., 228 Pa. 81, 77 A. 395; Blum Bros. v. Girard National Bank, 248 Pa. 148, 93 A. 940, Ann. Cas.1916D, 609; Standard Pennsylvania Practice, Vol. 8, Sec. 77, pp. 541, 542. It follows therefore that the receivers in the case at bar exercised the privileges conferred by the corporate franchise, that is to say, they carried on the business of the corporation through the medium of the corporate franchise and were therefore charged with the duty of maintaining that franchise, the right of the corporation "to be". They also received, pursuant to the order of the court, as one of the corporate assets, the franchise of the corporation, and they were charged by the order of the court with the duty of protecting and conserving it. Therefore they were charged with the duty of maintaining the franchise of the corporation. It follows that they must be deemed to have incurred as a necessary expense of their administration the cost of maintaining the corporate existence of the debtor, a privilege measured by the State of New Jersey by the amount of the franchise tax now under discussion. We think that the payment or the withholding of payment of this sum was not a matter which rested within the discretion of the District Court after its order appointing receivers was made. The terms of the order are such as to require the protection of the franchise by the receivers and to require the exercise of the privilege conferred by the franchise by the receivers. The exercise of the franchise and its preservation are benefits from which the receivers and the corporation have profited. Equity will therefore compel payment for the benefits conferred. See Louisville Railroad Company v. Wilson, 138 U.S. 501, 507, 11 S.Ct. 405, 34 L.Ed. 1023; Girard Trust Company v. Cooper, 162 U.S. 529, 16 S.Ct. 879, 40 L.Ed. 1062; In re New York Investors, 2 Cir., 79 F.2d 182.

■ Nor do we think that the defense asserted by the appellees that such a result gives extra-territorial effect to the taxing statutes of a foreign state is material under the facts of the case at bar. We think that this defense as asserted serves to confuse the issue rather than to clarify it. We go no further, however, than to rule that since the receivers have availed themselves of the benefits of a franchise which has transcended state lines, and were required by the order of their appointment to preserve that franchise, neither the receivers, their successors, the trustees, nor the debtor may now be heard to say that it will not now be paid for. The claim of the State of New Jersey for franchise taxes for the year 1934 will be allowed accordingly.

■ In respect to the issues presented by the 1935 franchise taxes incurred during the 77B proceedings, if the claim be allowed it must be as an expense of administration incurred by the trustees. It is true that title to all the property of the debtor passed to the trustees upon their

qualification as provided by section 77B(c) (2), 11 U.S.C.A. § 207(c) (2). But again the order appointing the trustees authorized them to carry on the business of the debtor and they did so. As in the case of the appointment of receivers, the order appointing the trustees specifically referred to the "franchises" of the corporation and required the trustees to protect and conserve this asset as well as all other assets transferred to them. Moreover, the very section of the Bankruptcy Act as amended, viz.: section 77B, from which the trustees derived their authority looks to the preservation of the corporation as a going concern to the end that all classes of its security holders, including stockholders as well as creditors, may be protected. It follows that the trustees, particularly in view of the provisions of the order of the court by which they were appointed, had the duty to preserve the corporate franchise at least until a plan of reorganization had been confirmed by the court which rendered the continued existence of the debtor unnecessary. It should be noted further that the trustees themselves observed this duty for they filed the corporate stock return as required by the law of New Jersey. Though they declare that they filed this return under protest,[4] none the less, that filing could have but one end in view, namely, the preservation of the franchise.

From all of the facts presented we must conclude that the trustees were required to incur the obligations essential to the preservation of the franchise. Being so obligated, equity will treat them as though they had incurred this obligation, and it thereby became one of the expenses of administration incurred by the trustees.

As to the 1933 franchise taxes an entirely different question is presented. The amount of this tax must be allowed as a claim in the proceedings at bar as distinguished from an expense of administration or not at all. In re United States Car Co., supra; Chesapeake & Ohio R. Co. v. Atlantic Transp. Co., 62 N.J.Eq. 751, 48 A. 997. Under the law of New Jersey this tax was due and owing upon January 1, 1933. The appellees for their part contend that this tax is unenforcible in these proceedings because the law of the State of New Jersey imposing it can have no extra-territorial effect, citing Moore v. Mitchell, 2 Cir., 30 F.

2d 600, 65 A.L.R. 1354, affirmed 281 U.S. 18, 50 S.Ct. 175, 74 L.Ed. 673.

Other considerations bear upon the situation presented, however. There can be no doubt that if the proceedings at bar were ordinary bankruptcy proceedings with liquidation and distribution of assets to creditors as the end in view, the 1933 franchise taxes would constitute a provable claim in the proceedings entitled to priority by the provisions of Section 64a of the Bankruptcy Act, 11 U.S.C.A. § 104(a). New Jersey v. Anderson, supra; In re Halsey Electric Co., D.C., 175 F. 825, affirmed State of New Jersey v. Lovell, 3 Cir., 179 F. 321, 31 L.R.A., N.S., 988, certiorari denied 219 U.S. 587, 31 S.Ct. 471, 55 L.Ed. 347; Bates v. Archer, 6 Cir., 288 F. 182. It is likewise true that subsection (k) of Section 77B, 11 U.S.C.A. § 207(k) expressly provides that Section 64 of the Bankruptcy Act shall not apply to proceedings instituted pursuant to the provisions of Section 77B " * * * unless and until an order has been entered directing the trustee or trustees to liquidate the estate." Since no such order has been entered here, the appellees contend that claim for franchise taxes for the year 1933 is not a provable claim.

We cannot agree with this contention. Subsection (b) of Section 77B, 11 U.S.C.A. § 207(b), defines the term "creditors" as including for all the purposes of the plan of reorganization, its acceptance and confirmation, " * * * all holders of claims of whatever character against the debtor or its property * * *". The subsection also defines "claims" as including " * * * debts, securities, other than stock, liens, or other interests of whatever character." A statutory definition of a creditor therefore includes those who have claims against the debtor as well as those who have claims against its property and it cannot be doubted that franchise taxes are claims against a corporation. The definitions of a creditor and a claim, as contained in Section 77B, are broad enough to include, and in our opinion do include, the State of New Jersey as a creditor and its demand for the 1933 franchise taxes as a claim. The definitions contained in Section 77B are paramount in determining the status of those affected by a plan of reorganization promulgated pursuant to its provisions. Since the plan of reorganization itself provides for the pay-

---

[4] The 1934 return was filed by the corporation and not by the receivers. The corporation filed the return under protest.

The 1933 return was made by the corporation without protest. This was prior to receivership.

ment of all claims not entitled to priority (subsection 3 of Part III of the plan), we can perceive no reason why this claim should not be paid in cash or assumed by the new company. Under the law of New Jersey the whole amount of the franchise tax was due upon January 1, 1933, and the obligation may not be apportioned. New Jersey v. Anderson, supra, page 494, 27 S. Ct. 137. Since no question of priority of payment is in issue in the case at bar, it is not necessary to pursue the question further.

 One question remains. Is the appellant entitled to collect 1% per month upon its claims? Section 57j, 11 U.S.C.A. § 93 (j), of the Bankruptcy Act, specifically referred to in Section 77B(k) as being applicable to reorganization proceedings prohibits the allowance of penalties upon claims in bankruptcy proceedings. We think that there is no doubt that the interest rate of 1% per month for each month that the tax remains unpaid proposed to be levied by the statute (P.L.N.J.1919, ch. 118, p. 280, § 1, Comp.St.Supp.N.J.1924, § 208—505a, as amended by P.L.N.J.1927, ch. 261, p. 481, § 1 supplementing L.1884, ch. 159, p. 232, as amended by P.L.N.J.1931, ch. 102, p. 171) is a penalty. New York v. Jersawit, 263 U.S. 493, 496, 44 S.Ct. 167, 68 L.Ed. 405. In the case at bar we presume that the State of New Jersey will not object to receiving simple interest and if this be so, such interest should be allowed on the claims.

The decree of the District Court of September 7, 1937, approving and confirming the Master's report is reversed in so far as it relates to the disallowance of the claims of the State of New Jersey for franchise taxes for the years 1933, 1934 and 1935, and the cause is remanded with directions to proceed in conformity with this opinion.