214 | 529
225 | 481

# Folk, Appellant, v. State Capital Savings and Loan Association.

*Building and loan associations—Stock—Issue of full-paid stock.*

A building and loan association commits no unlawful act in issuing full-paid stock, the dividends of which are not guaranteed but are limited in amount and payable only out of the profits, and the holders of which are entitled to no preference and have no advantage over other stockholders upon distribution in case of loss or insolvency; provided that the issue is incidental to the main business of the association and is intended to provide a fund from which loans may be made to the holders of installment stock.

*Building and loan associations—Withdrawal fee.*

A building and loan association incorporated under the laws of Pennsylvania has the right to establish a fixed withdrawal fee provided that it is a reasonable one, fairly approximating the proportion which upon the most accurate practicable calculation would appear chargeable against each share at the date of withdrawal.

*Building and loan associations—Employment of solicitors and collectors.*

Building and loan associations organized under the laws of Pennsylvania may employ collectors and solicitors in furtherance of the requirements of their business.

Argued Feb. 28, 1906. Appeal, No. 34, Jan. T., 1906, by plaintiffs, from decree of C. P. Berks Co., dismissing bill in equity in case of George M. Folk, John T. Balsley, Edward W. Madden and W. H. Fisher v. State Capital Savings and Loan Association. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

ENDLICH, J., filed the following opinion:

The plaintiff, suing for himself and others in like interest who may join him, is the holder of stock in the defendant building association, incorporated under Act April 29, 1874, P. L. 73. The par value of its stock is $100 per share. The ordinary installment stock issued by the association is to be paid for until matured by monthly dues of fifty cents. The by-laws, however, in article 8, provide for prepayment of the par value of stock subscribed for at the time of subscription and for its issuance upon such prepayment as " Full Paid

Stock " bearing dividends not exceeding five per cent per annum payable out of, but not otherwise participating in, the profits of the corporate business.    In the same.article provision is made for voluntary withdrawals of stock, a definite and invariable charge thereon per share being established during the first and second years, which, as the answer explains, is in lieu of and fairly approximates the average share of expenses above earnings apportionable during that period to each share. In the prosecution and extension of its business throughout the state, the association employs agents to solicit and receive stock subscriptions and to collect and receipt for payments due the association, allowing them a reasonable compensation for their services.    It is contended by the plaintiff that (1) the issuance of full paid dividend bearing stock, (2) the deduction of a withdrawal fee, and (3) the employment of paid solicitors and collectors are contrary to law and prejudicial to the interests of the plaintiff and other shareholders in the association, and that its corporate existence will be jeopardized by the continuance of these practices.    Upon these grounds it is prayed that they be restrained by injunction.    The cause was set down for hearing and heard upon bill and answer.

1. The right of a building association to issue paid up dividend bearing stock has been put upon express statutory basis in England: see Acts 37 & 38 Vict. Ch. 42, sec. 13; and in Tennessee : see Wilson v. Parvin, 119 Fed. Repr. 652; 56 C. C. A. 268; Kirklin v. Savings & Loan Ass'n, 107 Ga. 313 (33 S. E. Repr. 83).    It is denied in Illinois as contravening a positive statutory direction that stock " shall be payable in . . . . periodical installments: " see Rhodes v. Savings & Loan Co., 173 Ill. 621 (50 N. E. Repr. 998), and in North Carolina as inconsistent with the building association system as there legalized: see Meroney v. B. & L. Ass'n, 116 N. C. 882 (21 S. E. Repr. 924).    It has been affirmed as existing in the absence of any statutory provision expressly authorizing or prohibiting it, in England (under a statute previous to that above referred to) : In re Guardian Permanent Benefit Bldg. Soc. L. R., 23 Ch. D. 440, sustained on appeal to the House of Lords ; Murray v. Scott L. R., 9 App. Cas. 519 ; in Alabama : Johnson v. Bldg., etc., Ass'n, 125 Ala. 465 (28 So. Repr. 2) ; Bell v. B. & L Ass'n, 140 Ala. 371 (37 So. Repr. 237) ; in Iowa:

Tootle v. Singer, 118 Ia. 533 (88 N. W. Repr. 446), in Missouri: Hohenshell v. S. & L. Ass'n, 140 Mo. 566 (41 S. W. Repr. 948); State v. Loan, etc., Ass'n, 142 Mo. 325 (41 S. W. Repr. 916); Latimer v. Loan, etc., Co., 81 Fed. Repr. 776; and in New York: People v. Preston, 140 N. Y. 549 (35 N. E. Repr. 979). In Pennsylvania, in Criswell's App., 100 Pa. 488, on distribution of the assets of an insolvent building association, the holders of " cash matured stock, for which payment was made in advance," were adjudged to come in pari passu with other stockholders (that much being decided also in Wisconsin): Leahy v. Bldg., etc., Ass'n, 100 Wis. 555 (76 N. W. Repr. 625), and in Bldg. & L. Ass'n v. Linhart, 4 Pa. Dist. Rep. 620, it was held by Judge McILVAINE, that a building association incorporated under the act of 1874 has the power to issue, under its by-laws, paid up stock carrying a fixed annual dividend. The same view was expressed by Mr. Attorney General ELKIN in an opinion reported, 8 Pa. Dist. Rep. 567, whilst a contrary view is intimated by Mr. Attorney General CARSON in a recent opinion reported, 14 Pa. Dist. Rep. 80.

The act of 1874, with its supplements, provides for the incorporation and regulation of corporations generally. It declares, in section 1, that " each of them " shall by virtue of its existence as a corporation thereunder have certain powers, " unless otherwise specially provided." Following this section, with its enumeration in broadly comprehensive terms of powers thus common to all corporations, comes the division of these into classes, building associations being included in the second class, and various provisions of a more or less general character regulating the mode and procedure of incorporation, the details of organization, conduct of business, etc. These provisions in turn are succeeded by a series of sections each containing special directions relative to a particular species of corporation, among them section 37 relating to building associations. This section has been modified and added to from time to time by later enactments, but in its essentials remains unchanged. Like all the other special provisions concerning particular corporations, those dealing with building associations, whether contained in section 37 as originally enacted or incorporated in or added to it by subsequent legislation, are of course to be read as part, and in connection with the general provisions, of

the act of 1874. They were not intended and cannot be properly understood as denying or limiting any of the powers conferred upon corporations generally except in so far as the subject-matter of those powers has been specifically dealt with in such a way as to expressly negative or necessarily imply a curtailment of them—as, e. g., concerning the purchase of real estate, the borrowing of money, the measure of fines, and the like. Apart from directions of this sort, the specific provisions on the subject of building associations are rather of an enlarging, enabling character, conceding to them exceptional powers by no means common to corporations generally and giving rise to no implication of an intent to deprive building associations of rights incidental, in the absence of special provisions, to their status as corporations under the general provisions of the act of 1874, and consistent with the character and objects of building associations generally. It is, indeed, to be noted that the legislature has attempted no definition of what constitutes a building association. It has assumed that certain features and methods are essential to it, and there is no room for doubt that without them no corporation, whatever its label, can claim to be a building association. But it has not excluded the possibility that, consistently with these essential features, the legitimate development of the business of these associations may add others which, at the date of the enactment, were not foreseen and against which, therefore, it is not to be taken as implying any prohibition. Thus it is well understood to be one of the differentiating characteristics of the building association scheme that it affords an opportunity to shareholders to subscribe for stock payable in small periodical installments. A society discarding this feature could hardly be looked upon as within any definition of building associations. In a society, however, which retains this feature, a provision enabling those who may wish to do so to acquit themselves at once of liability for periodical payments by an advance payment at the time of the subscription of the fixed par value of the shares subscribed by them, is manifestly not to be declared a departure from its fundamental purpose. It is but the affording of an opportunity for voluntarily anticipating a result eventually contemplated. And if upon such advance payment, the society agrees to allow to the paid up shareholder a periodical dividend reasonably

within the margin of profit shown by experience to be likely
to accrue to the society on the sum thus paid, which dividend
is understood to be payable only out of the profits earned and
in lieu of any share therein upon winding up, it is not clear
how the principle of mutuality of profit and loss as among the
whole number of shareholders is at all violated. It is settled
that this principle justifies and requires dereliction in the pay-
ment of dues to be made good by fines, and that the lawful
measure of these ordinarily is the real damage sustained by the
society through the failure of payment, plus such slight excess
as will make it more profitable for the member to pay promptly
than to lag behind : Lynn v. B. & L. Ass'n, 117 Pa. 1, and
the Act April 10, 1879, P. L. 16, section 6, has accordingly fixed
the maximum fine at two per cent per month on all arrearages.
If, however, the principle of mutuality requires compensation
to the society by the member for deferring payment, it would
seem equally to justify compensation by the society to the
member prepaying. Nor ought the importance of this element
in building associations to be overlooked. Doubtless it was
originally supposed that every member would eventually be-
come a borrower, and some accepted doctrines of building as-
sociation law are traceable to that theory. Practically there
never was a time when building associations generally could
get along without a considerable nonborrowing constituency,
simply because accumulations would have been too slow to
wait for. The mere investor, therefore, however inferior in
merit, was always needed. He has become more and more in-
dispensable as the opportunities for borrowing money have
multiplied, the rates of interest gone down, and the terms of
repayment offered outside of building associations to borrowers
become more flexible and easy. When interest ruled high and
the small borrower had difficulty in finding a lender upon prop-
erty affording a narrow margin of security and liquidation of
the debt piecemeal was possible only in building associations,
their loans were eagerly sought, obtained at high premiums
and supplied out of a comparatively slender stock of cash ; and
profits were correspondingly great. But all this has changed.
Premiums amount to very little. Profits are small on indi-
vidual transactions, mounting up only where the aggregate
of the transactions is considerable. Partly in deference to this

circumstance the Act June 4, 1901, P. L. 403, permits loans, with all the incidents of building association loans, to be made not only to members but also to outsiders willing to become members if advances are granted to them. To accommodate borrowers in sufficient numbers, however, the associations are under a necessity to have on hand a greater stock of cash. As much as fourteen years ago the legislature felt called upon by express enactment to sanction and at the same time to restrain within safe limits the practice of building associations of borrowing money wherewith to meet applications for loans in excess of available accumulations : Act June 2, 1891, P. L. 174, amended by Act June 25, 1895, P. L. 303. The device of issuing paid up stock bearing a fixed dividend was but a means of inducing investors to become members, of putting into the hands of the associations the larger funds demanded by altered conditions, and of avoiding, to some extent if not altogether, the haphazard, expensive and perilous expedient of temporary loans from parties having no interest in the proper and economical management of the corporate affairs. At the bottom of it all there would seem to be real necessity and sound policy. The possible danger from over-accumulation is guarded against by the statute authorizing by-law provisions for involuntary withdrawals : Act April 10, 1879, P. L. 16, section 3, and in the case of this defendant by a by-law empowering the directors to discontinue the issuance of stock. Neither is it alleged, nor does it appear that an allowance of five per cent upon prepaid stock is unreasonable or disproportionate to the general earnings of the association. That stock participates in no other way in the profits of the business. Even to that extent it participates only if the profits are sufficient to pay the dividend. In case of disaster it is entitled to no preference upon distribution. The installment stock on the other hand shares in the net earnings upon the paid up stock and in the event of insolvency comes in pari passu with it. It would seem in view of all this that there can be no criticism on the score of reasonableness in an arrangement whereby, so long as the association is a going concern, the paid up shareholder is secured a portion of the current profits up to five per cent upon the sum advanced by him. There is no allegation that it is either more or less than the holders of installment stock are likely to realize.

The allowance made by the association upon voluntary withdrawals considered in the light of its averments on that subject in the answer would indicate that the two classes of stock are on the long run very much in the same case.

Beyond these mere suggestions it will not be attempted to add anything to the general discussion of this subject by that profound lawyer and great judge, Sir George Jessel, M. R., in re Guardian Permanent Benefit Bldg. Soc. L. R., 23 Ch. D. 440, and by the distinguished judges speaking for their respective courts in the other cases above cited as substantially in line with it.    Neither is it needful to restate, by way of excerpts, necessarily lengthy, from these various decisions the reasoning upon which they are severally based.    It is enough to say that they sufficiently stand upon common ground and agree in their 'results to furnish authority of a very high and persuasive order for holding that the acceptance of prepayment of stock and the issuance thereupon of full paid dividend bearing stock is in no proper sense a borrowing of money (see to the same effect also Coltrane v. Blake, 113 Fed. Rep. 785 ; 51 C. C. A. 457), that; remembering that a building association cannot successfully perform its intended functions without members who are simply investors and not borrowers, its power to aid the latter class of members, and thus the main purpose of its creation, will be promoted by attracting investing members capable of putting larger sums at the society's disposal than  can be speedily gathered by means of periodical payments alone; that the allowance of a fixed dividend upon such paid up stock out of the profits of the corporate business is a reasonable incident to its issuance, just to both classes of shareholders and not calculated to give either an undue advantage over the other ; that on the contrary the practical effect of the concurrent issuance of both installment and full paid stock is likely to prove beneficial to both classes of shareholders ; that no essential characteristic of the building association scheme can be regarded as forbidding and no essential purpose of it as defeated by this device ; that it is contrary to no accepted rule of policy applicable to or involved in the nature of building associations; and that it is not excluded by statutory provisions in terms authorizing and regulating operations on the footing of installment stock, but not clearly confining associations thereto or expressly prohibit-

ing any other. And it is to be noted that with this view every adjudicated case involving the point under discussion appears to be in harmony, except perhaps the one above referred to decided in North Carolina.

Objections on the score of policy, consistency, etc., being out of the way, i. e., it being apparent that in the absence of any difficulty arising from statutory limitations the ordinary nature and powers of building associations as generally understood include the right here questioned, the inquiry in this case recurs to the terms of the act of 1874 and its supplements. Is there anything in these amounting to a special express or implied prohibition against their issuing, besides installment stock, full paid stock bearing dividends at a fixed rate payable out of, and not further participating in profits ? There is no question here of the right to issue preferred stock. There is no by-law authorizing that to be done and no attempt to do it. As regards the existence of the only power here involved, it must be conceded that the statute law of this state contains no express prohibition against it. Neither does it say, as the Illinois statute does, that the stock issued by building associations shall be paid in installments. It directs that the capital stock shall not go beyond a certain maximum and shall be divided into shares of such denomination, not exceeding $500 each, as the application for incorporation may specify; that it may be issued in series (a well-understood term implying nothing as to the manner of payment) not exceeding certain figures; that the time and place for payment of periodical installments on stock shall be appointed by by-law; that no periodical installment over $2.00 per share shall be allowed ; that unpaid installments shall be liens, etc. In short, it regulates the respective rights and duties of the society and the shareholder as regards installment stock, its issuance and the subject of payments thereon, and provides for their enforcement—all matters which from the beginnings of building associations have been the source of uncertainty and litigation and which called for definitive settlement by legislative enactment. It is, however, silent as to any other manner of paying for the stock, under which, in the nature of things, similar questions cannot arise. The act of 1879 makes it lawful for the association to provide for the involuntary withdrawal and cancellation of unadvanced shares " at or

before maturity," but does not require the retirement of shares when full paid, and it may be noted that the act June 22, 1897, taxing certain building association stocks seems to consist with no such necessity. We have then here a set of provisions which in terms neither authorize nor prohibit the issuance of full paid stock and from whose terms no implication of legislative intention on the subject fairly arises. We have in sec. 1 of the act of 1874 a declaration that all corporations formed under it shall, "unless otherwise specially provided," possess certain general powers, among which are :

" Sixth. To make by-laws not inconsistent with law, for the management of its property, the regulation of its affairs and the transfer of its stock.

" Seventh. To enter into any obligation necessary to the transaction of its ordinary affairs."

We have, in sec. 5, as amended by Act May 14, 1891, P. L. 61, a further declaration that :

" The by-laws of every corporation created under the provisions of this statute . . . . shall be deemed and taken to be its law, subordinate to this statute. . . . They shall prescribe the time and place of meeting of the corporation, the powers and duties of its officials, and such other matters as may be pertinent and necessary for the business to be transacted. . . ."

When it comes to determining what is " necessary " for the conduct of the business and transaction of the affairs for which a corporation has been chartered, it must of course be understood that what is meant is a due and profitable prosecution of its lawful purposes; that the " necessity " contemplated is a relative one having reference to economy, convenience, efficiency and success ; and that some latitude is to be allowed to the discretion of the corporation itself in deciding what, from time to time, is or is not in that sense necessary ; see Pittsburg Junct. R. R. Co.'s App., 122 Pa. 511. In view of that meaning of the word, of what has been said above and of what has been decided elsewhere, and it may be added in view of what is known to be the practice among building associations pretty much everywhere in recent years, it surely cannot be affirmed by the courts that the addition of the paid up stock feature to the original installment stock plan is not necessary in the build-

ing association scheme at this day. The weight of judicial opinion is decidedly to the contrary. And so is the practical testimony of those most largely interested in these associations, who have adopted it. It will not do to treat these people indiscriminately as devoid of business sense or as self-seeking schemers. Nor is it an argument against the existence of a power which may be legitimately employed and when so employed made the instrument of accomplishing a good and useful purpose, that it may, in the hands of dishonest men, be perverted to evil ends. It ought, therefore, upon principle, to be held that the power to receive prepayment of stock and allow a reasonable fixed dividend thereon payable out of the profits of the corporate business, i. e., to issue the kind of paid up stock here in question, exists in building associations chartered under the act of 1874 by virtue of the provisions of that act. And this view of it is greatly aided by the fact that it accords with the construction put upon the act by the legislature itself. The Act June 22, 1897, P. L. 178, "Taxing certain stocks of building and loan associations for State purposes," imposes a tax upon "all full paid, prepaid and fully matured, or partly matured stock in any building and loan association incorporated under the laws of this state . . . . upon which annual, semiannual, quarterly or monthly cash dividends or interest shall be paid." There is no law in Pennsylvania under which building associations can be incorporated save the act of 1874. It cannot be assumed that the legislature meant to make stock unlawfully issued by building associations a source of regular revenue to the state. The only possible alternative is that according to the legislative understanding of the act of 1874, building associations have, under it, the right and power to issue full paid dividend bearing stock as well as installment stock, which latter is expressly exempted from the tax imposed by the act of 1897 while unmatured and even when matured while in process of liquidation. The potency of such legislative interpretation of a statute is illustrated by the decision in Bourguignon Bldg. Assn. v. Com., 98 Pa. 54; Pardee's App., 100 Pa. 408; Seaman v. Washington Boro., 172 Pa. 467, and many other cases. That of Com. v. Hauck, 103 Pa. 536, goes to the length of referring to a statute imposing a penalty for the improper use of sidewalks constructed by individuals in

unincorporated villages as legalizing such and relieving them of the objection of being public nuisances.

2. The defendant's by-laws provide that withdrawals of full paid stock during the first year shall be entitled to the full amount paid less a charge of $1.00 per share; during the second year the full amount paid less a charge of fifty cents per share; and thereafter the full amount paid—withdrawals of installment stock during the first year to the full amount paid less a charge of fifty cents per share; during the second year the full amount paid with 4 per cent interest less a charge of fifty cents per share; during the third year the full amount paid with 4 per cent interest, thereafter and up to 108 months the full amount paid with 5 per cent interest, and after that period the full amount paid with full profits.

According to section 37, clause 2, act 1874, a member voluntarily withdrawing during the first year is entitled to receive the amount paid " less all fines and other charges," and during any subsequent year " in addition thereto," (i. e., to the amount paid less fines and other charges), legal interest thereon : this latter allowance being modified by the provision of section 2, act 1879, the obvious effect of which is to substitute therefor " such proportion of the profits of the association, or such rate of interest, as may be prescribed by the by-laws."

The answer avers upon the basis of actual experience, that during the first and second years of the running of installment stock the expenses fairly chargeable against it are relatively heavy and greater than its earnings, but thereafter relatively lighter and less than its earnings; that during the first and second years after the issue of full paid stock its average earnings do not exceed its proportion of the expenses and the state tax and dividends paid by the association, but thereafter yield a margin of profit to it; that in practice it is impossible to calculate upon each withdrawal of stock the exact proportion of expenses with which it is chargeable, and therefore necessary to fix a definite charge fairly approximating the same; and that the withdrawal charges objected to do so.

It is of course true that the terms of withdrawal fixed by statute cannot be materially altered by the society to the prejudice of its stockholders: Rhoads v. B. & S. Ass'n, 82 Pa. 180; Baker v. Sav., etc., Ass'n, 23 R. I. 243 (49 Atl. Repr.

967). But it is equally sure that, in obedience to the fundamental principle of mutuality already adverted to, every shareholder in a building association is liable to the extent of his stock interest for the losses and expenses of the enterprise, and that he cannot by withdrawing escape that liability : McGrath v. Savings & Loan Ass'n, 44 Pa. 383. This applies to installment stock and of course to paid up stock which is not preferred stock. Whatever may be the rule elsewhere, in this state it is settled that this liability is enforceable by way of deduction from, or set off against the withdrawal claim : B. & L. Ass'n v. Silverman, 85 Pa. 394, 396 ; Christian's App., 102 Pa. 184, 189. Indeed the act of 1874 makes it so by not only limiting the withdrawing member to what he has paid in, etc., " less all fines and other charges," (which latter phrase under the decisions last cited clearly includes a due proportion of the expenses), but also by making every share of stock subject to a lien in favor of the association " for the payment of unpaid installments and other charges incurred thereon under the provisions of the . . . . by-laws : " section 37. The only question open here is whether the association can by by-law fix a definite and invariable sum per share as representing the proportion of expenses, etc., chargeable to it upon voluntary withdrawal— call the sum so fixed and deducted a withdrawal fee or whatever else you please. It is difficult to see why not, provided the amount thus charged be in fact and according to actual experience a reasonable one, fairly approximating the proportion which upon the most accurate practicable calculation would appear chargeable against each share at the date of withdrawal. Absolute accuracy in this particular is never attainable before winding up, and the right of withdrawal does not involve a right to an account of profits and losses : Watkins v. B. & L. Ass'n, 97 Pa. 514, 522, 524. Approximation being concededly the most that is ever possible before dissolution : Watkins v. B. & L. Ass'n, supra, there would seem to be no tenable objection to a permanent regulation fairly accomplishing it. That such is the purpose and effect of the charge here in question appears by the answer. It is thus clearly distinguishable from the charge adversely considered by the attorney general in 14 Pa. Dist. Rep. 80, which was not treated as a liability of the association and not carried on its books, but went towards the

payment of salaries, etc.   In New Jersey membership was acquired in a building association in 1898, whose charter at the time validly provided for the right of voluntary withdrawal of the amount paid in with interest, less a withdrawal fee of $1.00. A statute passed in 1899 directed that a voluntarily withdrawing shareholder should be paid " not less than the sum of his installment paid in, less all unpaid fines and his proportionate share of any loss sustained by the association."   In a suit against the association by the member upon his withdrawal after the passage of this enactment, it was decided that it ought not to be held applicable because the rights of the parties were fixed by the law obtaining in 1898 ; but that, assuming the act of 1899 to apply, there was no inconsistency between it and the charter provision referred to, justifiable as intended to cover clerical expenses, and that the withdrawal fee should be deducted : Intiso v. S. & L. Ass'n, 68 N. J. L. 588 (53 Atl. Repr. 206).

3. The remaining point raised by the bill and answer requires but brief notice.   The power of corporations generally to employ and compensate subordinate agents is of course not open to question : 4 Thompson's Corp. sec. 4,783.   If statutory authority for so doing is needful, it is in the act of 1874, section 1, expressly conferred in the enumeration of powers applicable alike to building associations and to other corporations formed under it, viz. :

" 5. To appoint and remove such subordinate officers and agents as the business of the corporation requires, and to allow them a suitable compensation."

What has been said concerning the meaning of the word " necessary " is equally pertinent to the restriction, in this clause, of the power to appoint and compensate agents to " such . . . . as the business of the corporation requires." The question whether the business does require the employment, etc., of collectors and solicitors is one to be determined according to changing circumstances and must rest largely in the discretion of the corporation and its managers.   Certainly as against their judgment it can be a question for the courts only in clear and flagrant cases.   There is in this respect no discrimination to be made against building associations.   There was a time when they were looked upon with suspicion and

treated by the courts with some degree of disfavor. But by and by the beneficial results they were capable of achieving became manifest and their methods better understood. Thereupon the laws of the state admitted them to incorporation and legalized their business. Under those laws they are nothing less than full-fledged corporations, and their business is a lawful business. The right granted to them to prosecute that business carries with it the power to employ all the usual means appropriate for its efficient prosecution, just as in the case of any other corporation: Millvale Boro. v. Ry. Co., 131 Pa. 1, and to do all such things as are fairly incidental or auxiliary to its business, just as in the case of any other corporation: Malone v. Gas Light, etc., Co., 182 Pa. 309, 322. See also Howley v. R. R. Co., 213 Pa. 36, 41, 42. The possibility that such a power may be abused or the fact that in some instances it may have been abused is not decisive against its existence. As against this defendant there is no allegation of abuse, actual or threatened. The presumption is to the contrary. Nor is it difficult to understand how in view of the changes which have affected the business of building associations in recent years, the employment of solicitors and collectors may have become not only a convenience and a material aid in profitably carrying on their lawful operations, but positively indispensable to their survival. It may be added that this case presents no question as to the right to maintain branch offices, and its decision involves no expression of opinion on that question.

The conclusion is that there is no case here for an injunction under any of the prayers of plaintiff's bill, nor for any other relief, and that the bill is to be dismissed with costs.

*Error assigned* was the decree of the court.

*Charles M. Plank,* for appellants.—A building association incorporated under the laws of the state of Pennsylvania, has no right to issue full paid stock upon which a dividend is guaranteed. Stock in a building association, which is brought to its par value, is matured, and the holder thereof is entitled to be paid, and his connection with the association ceases: Winegardner v. Equitable Loan Co., 120 Iowa, 485 (94 N. W.

Repr. 1110); Rhodes v. Missouri Saving & Loan Co., 173 Ill. 621 (50 N. E. Repr. 998); Andrews v. Poe, 30 Md. 485.

Building and loan associations incorporated under the laws of this state have no right to charge or retain a withdrawal fee: Wittman v. Concordia Building Assn., 13 Phila. 95; Rodgers v. Southwestern Mutual Saving Fund & Bldg. Assn., 7 W. N. C. 95.

The appointment of solicitors and collector by a building association doing business over the entire state is practically the establishing of branch offices and is not authorized by law.

*Charles H. Bergner* and *M. W. Jacobs*, with them *W. Kerper Stevens*, *Wm. A. Shomo*, *Joseph Savidge* and *Joshua W. Swartz*, for appellee.—Full paid stock may be issued: Criswell's App., 100 Pa. 488; Heptasoph B. & L. Assn. v. Linhart, 4 Pa. Dist. Rep. 620; Com. v. Hauck, 103 Pa. 536; Pardee's App., 100 Pa. 408; Seaman v. Washington Boro., 172 Pa. 467.

In other jurisdictions, in the silence of legislation upon the subject, the right of associations to issue full paid and prepaid stock has been upheld in a number of cases, among which are the following: In re Guardian Permanent Benefit Building Society, L. R. 23 Ch. Div. 440; Murray v. Scott, L. R. 9 App. Cas. 519; People ex rel. Fairchild v. Preston, 140 N. Y. 549 (35 N. E. Repr. 979); Hohenshell v. Home Sav., etc., Assn., 140 Mo. 566 (41 S. W. Repr. 948); State v. Loan, etc., Co., 142 Mo. 325 (41 S. W. Repr. 916); Kirklin v. Atlas Savings, etc., Assn., 107 Ga. 313 (33 S. E. Repr. 83); Johnson v. Nat. Bldg., etc., Assn., 125 Ala. 465 (28 So. Repr. 2); Bell v. B. & L. Assn., 140 Ala. 371 (37 So. Repr. 237); Tootle v. Singer, 118 Iowa, 533 (88 N. W. Repr. 446); Latimer v. Equitable Loan, etc., Co., 81 Fed. Repr. 776.

Withdrawal fees may be charged: Intiso v. Savings & Law Assn., 68 N. J. L. 588 (53 Atl Repr. 206); McGrath v. Savings and Loan Assn., 44 Pa. 383.

The association had a right to employ soliciting and collecting agents.

OPINION BY MR JUSTICE FELL, March 19, 1906:

The general purpose of building associations is the accumulation of funds to be loaned to their members and to be repaid in

small periodical payments.  The accumulation from the pay-ment of installments on stock is so slow as often to hamper their practical operations and different methods have been adopted to provide funds to meet the demands of borrowing members promptly and thus to promote the general purpose.  Building associations are authorized by the Act of June 25, 1895, P. L. 303, to borrow money for temporary use when applications for loans exceed the accumulations in the treasury, and when a series of stock has matured.  The issuing by these associations of full paid stock to serve the same purpose as borrowing is an enlargement of their scope of operations not inconsistent with their original design, if properly restricted.  While it has not been expressly authorized by the legislature, there is a distinct recognition of the practice by the Act of June 22, 1897, P. L. 178, which subjects such stock to taxation.  We find nothing unlawful in the issuing of full paid stock, the dividends of which are not guaranteed but are limited in amount and payable only out of the profits, and the holders of which are entitled to no preference and have no advantage over other stockholders upon distribution in case of loss or insolvency; provided that the issue is incidental to the main business of the association and is intended to provide a fund from which loans may be made to the holders of installment stock.  To this extent and for this purpose its issue is within the implied powers of such associations.

The reasons stated by the learned judge of the common pleas amply support the decree dismissing the bill, and upon them the decree is affirmed at the cost of the appellant.