### Morris Resnick B. & L. Assn. v. Barnes et al., Appellant.

Argued November 1, 1932.

Before TREXLER, P. J., KELLER, GAWTHROP, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Paul Reilly*, for appellant.—Stock pledged by a member of a building and loan association can only

be sold on a fi. fa. Selikowitz v. Merchants B. & L. Assn., 103 Pa. Superior Ct. 453; Duquesne Bond Co. v. American Surety Co., 264 Pa. 203; Glazier v. Jacobs, 250 Pa. 357.

*A. L. Hodes* of *Polish & Wachs,* for appellee.—An attachment creditor stands in the position of his debtor as against the garnishee and whatever the stockholder of a building and loan association could require the association to do the attaching creditor can also require: LeBarre v. Doney, 53 Pa. Superior Ct. 435; Seligman v. Kearns, 91 Pa. Superior Ct. 413.

OPINION BY KELLER, J., January 25, 1933:

The plaintiff obtained a judgment against Marcellus B. Barnes and issued an attachment execution, summoning this appellant as garnishee.

In its answers to interrogatories the garnishee admitted that at the time the attachment was served on it (August 19, 1931) the defendant, Barnes, held five shares of its stock (Book 2307) which had matured on the first Thursday in September, 1931, of the value of $1,000; and five shares of stock (Book 2406) in a later series, which had a withdrawal value of $824; that at the time the writ of attachment was served these ten shares of stock were held by it as collateral security for stock loans aggregating $1,400, and that the defendant was indebted to it by way of dues, interest and fines on said stock and loans, in the sum of $34.14, which had since been increased; that the maturity value of said five shares (Book 2307) $1,000, had been appropriated by it to said loans; that the five shares (Book No. 2406) had not been appropriated by it or the defendant in the execution. The solvency of the garnishee was not disputed. On plaintiff's rule for judgment for the amount admitted to be due the court adjudged that the garnishee had in its hands

stock belonging to the defendant of the value of $330.76, in excess of all claims of the garnishee; being the withdrawal value of the five shares of stock (Book 2406), less the balance due by the defendant on said loans, $400, and arrears of dues, interest and fines. The garnishee appealed.

The appellant contends that on attachment execution against a defendant, as respects his stock in a building and loan association, all that the attaching creditor can do is to attach the stock, and, upon a scire facias against the garnishee, have a determination therein that the defendant was the real owner of the stock, with the right to proceed by execution and sell the stock as the property of the defendant, as was contemplated by the Act of June 16, 1836, P. L. 755, sections 32-38, with respect to attachments on stock. That was the method prescribed by that act and it was, at least until recently, the method in force as respects attachments on capital stock of corporations in general: Glazier v. Jacobs, 250 Pa. 357 (1915), 95 Atl. 532. Until 1859 it was the only course available in attaching shares in building and loan associations, although they were liable to be sold on fieri facias under the Act of March 29, 1819, P. L. 226-7, 7 Smith's Laws 217, unless assigned to the association as collateral: Early & Lane's App., 89 Pa. 411, 413. For the reasons given hereafter we need not refer to the effect on the Acts of 1819 and 1836, relative to the levy on and sale of corporate stock, made by the Uniform Stock Transfer Act of May 5, 1911, P. L. 126, which provides that no attachment or levy upon shares of stock for which a certificate is outstanding shall be valid until such certificate be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined.

Until the Act of April 12, 1859, P. L. 544, the law made no provision for a withdrawal value of building

and loan association shares. But that act recognized the fundamental difference between capital or corporate stock in an ordinary corporation for profit and stock in a building and loan association. Ordinarily a share of stock in a corporation represents the right which its owner has in the management, profits and ultimate assets of the corporation: Cook on Stock and Stockholders, sec. 12. The capital stock is the property or means contributed by the stockholders as the fund or basis for the business or enterprise for which the corporation was formed: Bailey v. Clark, 21 Wallace 284. If the stock is all common stock every share represents an aliquot part of such property, and is equal in value to every other share; as long as it is outstanding it cannot be determined or ended during the life of the corporation. It has no withdrawal value, no matured value at which the corporation is required to pay its holder a specific principal sum. While the interest which a member of a building and loan association has in such corporation is called 'stock' and has some of the attributes of stock in an ordinary corporation it is rather a share or part in a mutual cooperative savings association, under which the members contribute monthly, or at other stated intervals, stated amounts, which being lent to the members, by the accumulation of monthly interest, premiums and fines will produce a fund, which is equitably apportioned at stated intervals among the series outstanding until the share amounts to a certain full paid or matured value, at which time the series of 'stock' so matured is paid off, and the member ceases to be a stockholder unless he subscribes again to a new series. Each share is not an aliquot part of the association's property, is not the same in value as every other share, and is intended to be terminated and paid off when it reaches the fixed matured value; and it has, in the meantime, a withdrawal value which may be drawn out in accordance with law and the by-laws of the as-

sociation. It resembles less in character the stock of an ordinary business corporation than it does an endowment policy in a mutual life insurance company. Stockholders in a building and loan association are regarded, in a sense, as partners in a mutual savings association: Brown v. Victor Bldg. Assn., 302 Pa. 254, 259, 153 Atl. 349. Ordinarily certificates of stock are not issued but a pass book in which the monthly payments may be credited is issued, which is retained by the member even after he has borrowed on the 'stock' from the association.

Following the Act of 1859 and clause 2 of section 37 of the Corporation Act of 1874, (P. L. 73, p. 97) which in effect reenacted the former's provisions, the decisions show two methods of attaching in execution stock of building and loan associations: The one, the old method, (Erthal v. Glueck, 10 Pa. Superior Ct. 402; Economy Bldg. Assn. v. Hungerbuehler, 93 Pa. 258); and the other, by regarding the withdrawal value of the stock as a debt due by a solvent association to its stockholders following the attachment, which in connection with the rule for answers to interrogatories may be treated as a demand by the judgment creditor, —who stands in the place of the defendant stockholder and succeeds to his rights (LaBarre v. Doney, 53 Pa. Superior Ct. 435)—for its appropriation and withdrawal, (Germania Bldg. Assn. v. Neill, 93 Pa. 322, 323; Egolf B. & L. Assn. v. Cleaver, 228 Pa. 60, 77 Atl. 245). If this second method is warranted by law it seems, especially in view of the change effected by the Uniform Stock Transfer Act, to be, at present, the more efficient and desirable way; for a purchaser of the stock must keep up the payment of dues, interest, etc. (Orient B. & L. Assn. v. Freud, 298 Pa. 431, 436, 148 Atl. 841), and is liable for the fines and consequences of default which may ensue in the time between the attachment and the sale. On the other hand no harm can be done the association or the defendant

by the second method. Upon the issuing of the attachment and the filing of interrogatories the suit is treated as an election to appropriate the withdrawal value of the stock to the debt, if any, due the association and as a demand for the excess of such withdrawal value over and above such debt, made by one who stands in the place of the stockholder by virtue of his attachment. If the association is solvent, (See Kurtz v. Bubeck, 39 Pa. Superior Ct. 370; Stone v. Schiller B. & L. Assn., 302 Pa. 544, 552, 153 Atl. 758) the withdrawal value, or the excess of the same above the debt due the association, becomes payable to the creditor only as and when its payment could be required by the stockholder in due course under the law, and the court will restrain execution until that time has arrived. If the association is insolvent when the attachment is served, the judgment creditor will take no more under his process than the defendant stockholder could have obtained by a withdrawal notice as of that date, and the court will see that he secures no preference or advantage over the other stockholders. A suit or action has frequently been recognized as a form of demand. This second method has been in use since 1880 (Germania Bldg. Assn., v. Neill, supra) and if the attachment and the filing of interrogatories, with a rule on the garnishee to answer, be regarded as a demand, the practice is fully warranted under the Act of 1836 as an attachment upon a debt: Sections 35 and 38 (II) of the Act of 1836, supra.

The appellant also relies upon the provision of Section 37 of the Corporation Act of 1874, P. L. 73, p. 97, "that no stockholder shall be entitled to withdraw whose stock is held in pledge for security"; and section 14 of the association's by-laws: "And provided also that no stockholder shall be entitled to withdraw whose stock has been assigned to the Association as security for a loan until such loan and all arrearages and charges or other sums due the Association have

been paid in full'', and asserts that, in any event, the utmost a borrowing stockholder can receive on such 'withdrawal' is the amount of dues he has paid in. Counsel apparently has overlooked the Act of April 10, 1879, P. L. 16, (yet in force and amended by Act of April 30, 1929, P. L. 901), which provides in section 4, that "A borrower may repay a loan at any time, and in case of the re-payment thereof before maturity of the shares pledged for said loan, there shall be refunded to such borrower, (if the premiums, bonus or interest shall have been deducted in advance) such proportions of the premiums, bonus or advance interest bid as the by-laws may determine, unless the same amounts to two per centum or less of such loan, in which case no return shall be made of such premiums, bonus or interest so deducted in advance......And further provided, that such borrower shall receive the withdrawing value of the shares pledged for said loan, and the shares shall revert back to the Association." We applied the Act of 1879 in Hockfield v. Woloderker B. & L. Assn., 85 Pa. Superior Ct. 336; and in Frisby v. The Armenian-American B. & L. Assn., 107 Pa. Superior Ct. 313, our Brother PARKER has gone into the matter fully with the same result. It was recognized as being in force in Lepore v. Twin Cities Nat. B. & L. Assn., 5 Pa. Superior Ct. 276, 279, though not referred to in Folsom B. & L. Assn., v. Gogel, 24 Pa. Superior Ct. 539, but in the last named case the borrowing shareholder was in default and arrears on his payments for four years, and a different rule was applied, which was, however, equitable in the circumstances of that case. The defendant here was not a defaulting stockholder. The case of Watkins v. Workingmens' B. & L. Assn., 97 Pa. 514, although decided in 1881, was concerned with facts which occurred before the Act of 1879 was passed. In Wadlinger v. Washington-German B. & L. Assn., 153 Pa. 622, 26 Atl. 647, the withdrawal value of the shares

was credited on the judgment debt. A borrowing stockholder cannot, of course, be a withdrawing stockholder, in the sense that he is entitled to the withdrawal value of his shares free of the debt due the association; but, where the association is solvent, he can direct the withdrawal value to be applied to his debt to the association and receive the excess, if any, in the same way as a withdrawing stockholder: B. Podol B. & L. Assn., v. Polak, 102 Pa. Superior Ct. 36, 136 Atl. 556.

The plaintiff, as respects the excess of the withdrawal value of the defendant's stock over and above his indebtedness to the garnishee association, stands in the position of a withdrawing stockholder, and the court below will control judgment, and any execution issued upon it, so as to permit no injustice to the association and the other stockholders.

The assignment of error is overruled. The costs in the court below, including a reasonable fee to garnishee's counsel, are payable out of the fund attached. As thus modified the judgment is affirmed.