## Gaynor v. Force Building & Loan Association

*Samuel Halbert*, for plaintiff; *C. Laurence Cushmore, Jr.*, for defendant.

MACNEILLE, J., January 10, 1935.—We are considering exceptions to an adjudication.

The plaintiff by his bill sought to recover the withdrawal value of certain shares which he held in the defendant building and loan association. He subscribed to 15 double shares of the eleventh series of Loquaco Building & Loan Association on May 3, 1929, and made his payments at the rate of $30 a month until January of 1931, when the sum of the instalments paid was $630. Thereafter, he failed to pay his instalments and on July 16, 1932, gave notice of withdrawal, at which time the unpaid instalments amounted to $540. Before he gave the notice of withdrawal, and as early as 1931, the assets of the association were not sufficient to pay the stockholders dollar for dollar.

At a series of meetings held between August 4, 1932, and August 24, 1932, discussions were held and culminated in a merger of Loquaco Building & Loan Association, in which the plaintiff had originally taken his shares, with Force Building & Loan Association, which is here defendant. As part of the merger, an agreement of sale was entered into, by the terms of which it was provided that an appraisal be made of the assets of Loquaco Building & Loan Association, to fix the book value of the outstanding shares of that association. This appraisal was made by the Philadelphia Real Estate Board, which fixed this value as .486757679 of the amount which the stockholders, if paid up, would have paid in instalments. In the appraisal, delinquent dues were considered as assets. The plaintiff should have paid in, up to the time of withdrawal, $1,170, and his percentage value of this is $569.40. From this the chancellor deducted $557.90, representing dues and fines unpaid by the plaintiff up to July 16, 1932, when he withdrew. Thus he was awarded a balance of $11.51.

As matters of law, it was concluded by the chancellor that the plaintiff ceased to be a stockholder as of the time of his withdrawal notice, July 16, 1932; that

neither his assent nor dissent to a subsequent merger was given, and therefore plaintiff is entitled to the withdrawal value of his stock, from which is deducted his unpaid dues and penalties.

The exceptions on the part of the plaintiff are to practically all the chancellor's findings of fact and conclusions of law. However, we find ample in the testimony to support all the chancellor's findings of fact, and we believe that all the exceptions should be dismissed. Those exceptions that raise a question as to the charge to the member for his unpaid dues are the only ones which require discussion.

Plaintiff assumes that he should not be charged with his unpaid dues, and that he should receive the amount he had paid in without any such deduction. It is true that the status of the plaintiff and his contractual rights arising therefrom were fixed before the effective date of the Building and Loan Code of 1933. For that reason, the plaintiff points to the Act of April 29, 1874, P. L. 73, sec. 37(2), 15 PS §991, which provides:

". . . any stockholder wishing to withdraw . . . shall have power to do so by giving thirty days' notice of his or her intention to withdraw, when he or she shall be entitled to receive the amount paid in by him or her, less all fines and other charges; . . ."

He also calls attention to his association's bylaw on the subject of withdrawals, which provides:

". . . and shall upon surrender and cancellation of his or her stock be entitled to receive, out of the first unappropriated money in the treasury, all moneys paid in on said stock . . ."

But the difficulty which the plaintiff has to meet is that this act of assembly and this bylaw, while entirely reasonable and equitable for a solvent association, are not so when the association is insolvent. In a solvent association, a withdrawing stockholder should be paid the money which he has paid in and such share of the profits as the association has provided for that purpose, or, in lieu of such a provision, he should recover interest, after being charged, however, with fines or penalties. The effect of such a method is equitable as to each shareholder. The fines and penalties imposed upon a member for nonpayment of dues are for the purpose of obliging him to contribute something to take the place of the profit which it may be assumed the association has failed to earn because of his delinquency. A solvent association is one which may pay 100 percent of each member's contribution. It makes no difference whether you say you are permitting a member to withdraw what he paid in or whether you say you are paying him 100 percent of what he paid in. Insolvency, however, changes the whole situation. Let us assume that in an insolvent association the assets are only equivalent to 50 percent of the instalments paid and due. Let us suppose two members with an equal obligation to pay instalments to the extent of $1,000 each. A pays his, but B pays only $500. If you are in a position to pay 100 percent, A gets his $1,000 and B gets his $500, which is what they paid in. But suppose that only 50 percent can be paid—A gets $500, and B gets $250. Thus A, who met his obligation to pay $1,000 loses $500 and B, who did not keep his contract to pay $1,000 loses only $250. Thus, A who did his duty is penalized and B who did not do his duty is rewarded. From this it would appear that when insolvency exists there is some injustice in excusing B for his unpaid instalments.

Under all the Pennsylvania decisions, it is clear that a stockholder must contribute his share of the losses of the association, and it is provided by the Act of

1874, supra, sec. 37 (2), that every share of stock shall be subject to a lien for the payment of unpaid instalments and other charges incurred thereon.

In Folk v. State Capital Savings & Loan Assn., 214 Pa. 529, 540, it was said:

". . . Whatever may be the rule elsewhere, in this state it is settled that this liability is enforceable by way of deduction from, or set off against the withdrawal claim: B. & L. Assn. v. Silverman, 85 Pa. 394, 396; Christian's App., 102 Pa. 184, 189. Indeed the Act of 1874 makes it so by not only limiting the withdrawing member to what he has paid in, etc., 'less all fines and other charges', (which latter phrase under the decisions last cited clearly includes a due proportion of the expenses), but also by making every share of stock subject to a lien in favor of the association 'for the payment of unpaid installments and other charges incurred thereon under the provisions of the . . . by-laws:' section 37."

This seems to justify the opinion expressed in Sundheim, Building and Loan Associations, (3d ed.) 208, in the last paragraph of section 193, in which he said:

"In computing the liabilities of an insolvent association full paid or paid-up stock should be computed at its par value, and installment stock at the amount that should have been paid up to the time of the receivership or liquidation, and any amount that it was in arrears at that time should be deducted from the dividend paid. Dividends paid to a member while the association was in fact insolvent should also be deducted. By this method all holders of installment stock in the same series are placed on an equal basis, whether they have paid up to the time of the appointment of a receiver or liquidation or not."

It is a fact found by the chancellor that the unpaid instalments of the plaintiff were carried on the books of the association as assets and were so considered by the appraisers in determining the proportionate value of each share. It seems to us that this was fair to all shareholders. If the unpaid instalments be not charged to the plaintiff, the proportionate value thus arrived at is wrong. We feel that it was a proper conclusion of the chancellor to deduct from the proportionate value of the plaintiff's shares the amount of unpaid instalments.

The plaintiff has called our attention to Ferrando v. U. S. National B. & L. Assn., 307 Pa. 25, in which, under the facts of that case, the Supreme Court referred the matter to the lower court with instructions that the amount allowed should be reduced proportionately, having reference to the fact that the plaintiff in that case had not paid all his instalments. We have carefully read the opinion in that case. It does not appear that the defendant building and loan association showed that in arriving at its per share value there was included as an asset the unpaid dues of the association. Nor was the suit brought by plaintiff basing his claim upon a withdrawal of shares. The suit was brought by Ferrando on the ground that he had voted against a resolution passed by a majority of the stockholders of this association providing for transfer of all its assets to a new corporation. Thus his suit was as a nonassenting stockholder, and he was entitled to recover a proportionate value of his shares as of the date of such transfer. We are quite sure that if it were a fact that unpaid instalments on shares had been carried as assets of the association, the court would have directed a charge to be made accordingly against the proportionate share of the plaintiff. Here was a merger, which in effect is a dissolution of the older constituent corporation, and if a new corporation takes over the assets it must of necessity assume the old corporation's obligations. This obliges the payment to a dissenting stockholder of the proportionate value of the assets of the older corporation. The court, having found that this propor-

tionate value was fixed on a percentage basis, directed the calculation to be made accordingly. But in the instant case we have a withdrawing stockholder who was attempting to withdraw when his association was insolvent. There was no liability on his association to pay him on any basis that did not contemplate a deduction of what he owed that association. Of course in the instant case the deduction which is made for unpaid instalments is only for those instalments that were remaining unpaid at the time plaintiff presented his withdrawal notice.

Wherefore, the exceptions are dismissed.