Fielis, Appellant, *v.* Henry H. Edmunds Building and Loan Association.

16

Argued October 3, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-
FELD, PARKER, RHODES and HIRT, JJ.

*Michael A. Maloney,* for appellant.

*Edward Merchant,* for appellee.

OPINION BY PARKER, J., December 13, 1939:

This is an action in assumpsit in which there are no disputed facts and a pure question of law is raised. The appellant, who gave a notice of her desire to withdraw twenty-five shares of installment stock which she was carrying in the defendant building and loan association, claims that the court below erred in not awarding her a larger sum than the defendant was willing to pay her and has in fact paid to her. After trial and verdict, judgment n. o. v. was entered for defendant. We are in accord with the conclusion of the court below.

On April 6, 1936, the Secretary of Banking, acting under authority conferred by §808 of the Building and Loan Code, Act of May 5, 1933, P. L. 457, amended July 2, 1935, P. L. 574 [15 PS §1074-808], issued an order of segregation directing the defendant "to segregate from its other assets all payments of dues made on account of installment shares which have [had] not been pledged to the association as security for loans; to grant no further loans; to make no payments on account of withdrawn or matured shares; and to allow no credit for the value of any shares on account of the principal of any loan." On November 13, 1936, the plaintiff, having examined a late report of the financial condition of defendant, gave to its secretary a written notice of her desire to withdraw the stock so held by her. This notice was delivered to defendant's board of directors at the first meeting of the association there-

after on December 7, 1936. At that time the stockholder had paid to defendant $3,125, of which $2,925 had been paid before the order of segregation and $200 subsequent thereto. On January 22, 1937, an amended order of segregation was issued permitting the association to make payment "on account of withdrawn shares to the extent of not more than fifty per centum of the amount paid in on account of such shares." Acting on such authority the association in February, 1937, paid the plaintiff 50% of $3,125 or $1,562.50.

On April 7, 1938, Court of Common Pleas No. 1, Philadelphia County, on the association's petition, after hearing and notice to all stockholders as well as due advertisement, acting under authority conferred by §621 of the Building and Loan Code [15 PS §1074-621], found that the fair value of its assets was 25% less than the amount due to its shareholders and decreed "that, in order to distribute the losses of said Association equitably among its shareholders, the liability of said petitioner to its shareholders, including all shareholders who have given notice of withdrawal and are unpaid, be and the same is hereby reduced by the percentage of twenty-five (25%) per cent. of the amounts paid in to said petitioner by said shareholders, full credit to be given by said petitioner to all shareholders who have made payments on the stock of the Association, on and subsequent to the 31st day of March, 1936, meeting of the Association, in accordance with the annexed petition." On the same date the Secretary of Banking, finding that the condition of the association then warranted such action, revoked the order of segregation. The association subsequently paid to plaintiff $831.25, which with the amount previously paid equalled $2,-393.75, or $200 in full for dues paid after the original order of segregation and 75% of the dues paid prior to such order. We are of the opinion that this is all that the plaintiff was entitled to receive.

The appellant claims that she is entitled to $200 and

seven-eighths of all dues paid by her before segregation. She arrives at this result by insisting that the 25% reduction only applies to the balance due to her after she had received 50% in February, 1937. If such an inequitable result is to follow it must be due to some defect in the law or error in the decree of Common Pleas No. 1, for it is not in harmony with the decisions of the Supreme Court or this court.

A building and loan association is much like a partnership though possessing corporate rights: *Christian's App.*, 102 Pa. 184, 189. "Unlike a corporation its shareholders may withdraw their contributions under certain limitations": *Stone v. Schiller B. & L. Assn.*, 302 Pa. 544, 551, 153 A. 758. Such right of withdrawal is a privilege granted by statute rather than an absolute right: *Williams v. Wenger*, 319 Pa. 73, 179 A. 242; *Morris Resnick B. & L. Assn. v. Barnes*, 108 Pa. Superior Ct. 218, 221, 164 A. 358; *Homer B. & L. Assn. v. S. Makransky & Sons*, 126 Pa. Superior Ct. 90, 94, 190 A. 179. "Withdrawal by a shareholder of his contribution presupposes that sufficient assets or a relative proportion of them will remain for the benefit of those who continue to be active members: *Christian's App.*, supra. . . . . . . The statement that sufficient assets must remain means that where there is or may be an impairment of capital the right to withdraw is not unlimited: *Folk v. State Capital Savings and Loan Assn.*, supra [214 Pa. 529, 63 A. 1013]. But, where there is no impairment of capital, the shareholder's right to withdraw is complete; and he may enforce it by suit at law. . . . . . . [The retiring stockholder's right to a judgment in a suit at law] depends on whether the association is solvent or insolvent. . . . . . . Where an association is insolvent, as that term is generally understood, or where a succession of withdrawals would precipitate insolvency, or have a strong tendency to do so, a judgment should not be entered in an action by a withdrawing member": *Stone v. Schiller B. & L. Assn.*, supra, pp. 551, 552.

While it is true that the order of Common Pleas No. 1 did not specifically find the date as of which the capital was impaired and the appellant argues that it must therefore have been as of the date of the order, that court was dealing with an association over which the Department of Banking had taken partial control and it was in immediate connection with that status of the association that the court was acting. In addition there are other controlling facts that must be considered and are important in determining the meaning of that order and its effect on the rights of the plaintiff.

The original order of segregation, made more than six months before the plaintiff gave notice of a desire to withdraw her shares, provided that the association should "make no payments on account of withdrawn or matured shares." This was done by virtue of express authority granted to the Department of Banking by §808 of the code. When the department modified that order under authority of the same statute, thereby permitting the association to make payments "on account of withdrawn shares to the extent of not more than fifty per centum of the amount paid in on account of such shares," it was the clear intent of the order as disclosed by its words that no new basis should be set up for the purpose of determining an equitable distribution of the assets of the association among its stockholders. Any payments made by the amended order were merely on account of the liability as fixed when the original order of segregation was made. To hold otherwise would defeat one of the purposes of that order for in place of promoting an equitable distribution, it would make inequitable preferences possible. One of the primary purposes that the legislature had in mind in providing for a suspension of the right of withdrawal was to preserve the assets for equal distribution without preference by reason of subsequent action. In so far as the relative rights of the stockholders to participate in a distribution of the assets of the association

were concerned, when the original order suspending withdrawals was made each stockholder was thereafter entitled to the same treatment and one stockholder could not procure during the period the order was in effect a preference merely by giving notice of a desire to withdraw or by suit acquire the preferred rights of a creditor. Viewed in any other light, the action of the department would be absurd. If such result had been intended such restriction on withdrawals would have been revoked.

If time disclosed that the association was in fact solvent, all stockholders holding unencumbered stock would have the same right to be paid in full, but it became evident that the association was not solvent by 25% of the dues the stockholders had paid into the association and all must be treated alike. When a banking institution closes its doors and it is at a later date legally determined that the bank is in fact insolvent, the rights of creditors are fixed as of the date the bank closed its doors: *Gordon v. Anthracite Trust Co.,* 315 Pa. 1, 3, 172 A. 114; *U. S. Brick Co. v. Reading Shale Brick Co.,* 228 Pa. 81, 87, 77 A. 395; *Harr v. Bankers Securities Corp.,* 129 Pa. Superior Ct. 547, 555, 196 A. 522. Just so when the Department of Banking took a limited control of the management of the association under the order of segregation for the purpose of protecting the interests of all stockholders and it developed that the association was in fact insolvent, the relative rights of stockholders as to withdrawals were fixed as of the date of the order of segregation.

Returning to a consideration of the order of Common Pleas No. 1 reducing the liability of the association to shareholders, it will be noted that §621 of the code provides: "The manner of apportioning the losses among the corporations or persons, whose claims arose through the ownership of shares of the association, shall be the same as that provided by this act in the case of an association which is in possession of the Secretary of

Banking as receiver, or which is being liquidated in pursuance of a plan of voluntary dissolution authorized by this act." The order of reduction must be interpreted in the light of this statutory provision and the fact that the association was then operating under an order of segregation. It will be further noted that the decree fixing the amount of the impairment of capital provided that the liability of the association to its shareholders should be reduced by the percentage of *25% of the amount paid in to the association by the shareholders.* Remembering that the notice of withdrawal was not given until after the right to withdraw was suspended by the original order of segregation and was not reinstated until it had been determined that the association was insolvent by 25%, this plaintiff could secure no preferential rights over other stockholders by her notice to withdraw and she is not entitled to a judgment for any greater sum than if no application for withdrawal had been made.

A considerable portion of appellant's written argument is devoted to a discussion based on the premise that it was conceded that the withdrawal value of this stock, when notice of withdrawal was given, was the amount of dues paid to the association. This argument falls with the premise. The assumption was based upon a colloquy that took place between the trial judge and counsel for the plaintiff where such counsel asserted that the amount paid in by the stockholder represented the withdrawal value of the stock. This did not bind defendant for we do not understand that defendant's counsel so conceded and the judge of the court below clearly indicates that he did not understand such an admission to have been made. Such an assumption is so contrary to the facts in the case and the whole theory upon which the case was tried that it would have no force in any event.

Judgment affirmed.