BENTON'S APPAREL, INC. v. OTTO T. HEGNA
AND ANOTHER.
BEN FRANKLIN FEDERAL SAVINGS AND LOAN
ASSOCIATION, RESPONDENT.[1]

No. 33,306.

November 20, 1942.

[1]Reported in 7 N. W. (2d) 3.

*Fred Sorenson,* for appellant.

*Coursolle, Preus & Maag,* for Ben Franklin Federal Savings and Loan Association, respondent.

PIRSIG, JUSTICE.

Plaintiff holds a judgment against the defendants. Execution was levied thereon against the Ben Franklin Federal Savings and Loan Association, respondent herein and called the association hereafter, "upon any and all money, more particularly any shares of stock, debts, or credits, in your hands due and accruing to" defendant Edna Hegna. Doubt arising over the legal status of the levy, a motion was made by plaintiff for an order requiring the association "to make full and complete return upon the levy and execution" and to deliver to the sheriff "any and all property

or property interests of the defendant Edna Hegna." The motion was based upon a stipulation in which the facts stated herein appear. The present appeal is from an order denying the motion.

The levy of execution was made in accordance with Minn. St. 1941, § 550.14 (Mason St. 1927, § 9429), which provides:

"Other personal property shall be levied on by leaving a certified copy of the execution, and a notice specifying the property levied on, with the person holding the same; or, if a debt, with the debtor; or, if stock or an interest in stock of a corporation, with the president, secretary, treasurer, cashier, or managing agent thereof."

Respondent claims that not this section but Minn. St. 1941, § 302.14 (Mason St. 1940 Supp. § 7492-83), of the uniform stock transfer act controls. The latter section provides that no levy on a share of stock shall be valid unless the certificate is seized. This has not been done, because the defendant Edna Hegna has it with her and she is out of the state. Both parties have assumed that the interest which Edna Hegna has in the association and which is subject to the levy is that of a holder of a share of corporate stock and that the dispute is over which of the cited sections of the statutes govern. Despite this assumption, we consider the nature of her interest the controlling question in the case.

The association is a federal corporation, organized and existing under the charter and regulations of the Federal Home Loan Bank Board as a savings and loan association. Under its charter, subject to which the members hold their share accounts, "all holders of share accounts of the association * * * shall be deemed and held to be members thereof." The right to vote is granted "one vote for each $100, or fraction thereof, of the participation value of his share account," not exceeding 50 votes. The share capital of the association consists "of the aggregate of payments upon share accounts and dividends credited thereto less redemption and repurchase payments." The participation value in the share capital of each share account held by a member is "the aggregate of payments upon such share account and dividends credited thereto

less redemption and repurchase payments." Share account books are issued containing a certificate of membership and stating the participation value of the share account, but investment share accounts may be represented by separate membership certificates. The share account books resemble in form and size the customary passbooks of the ordinary savings bank.

The association has the right to "redeem" all or any part of a share account on any dividend date by giving 30 days' notice and subject to certain other conditions which need not be stated. Holders of share accounts have the right to file with the association their written applications that the association repurchase their share accounts in full. If these are not complied with when filed certain provisions come into operation. Thus, if payment is not made after a lapse of 30 days, the applications shall be paid in their order of filing. Also, the mode of paying applications for repurchase of large amounts is regulated. The repurchase value of a share account is its participation value as already defined. The purpose of a repurchase can be gathered if compared with a withdrawal from a deposit in an ordinary savings bank. The share accounts are transferable only upon the books of the association upon proper application by the transferee and the acceptance of the transferee as a member upon terms approved by the board of directors.

Throughout the charter and by-laws, holders of the accounts are spoken of as members, the accounts are referred to as share accounts, and the distribution of profits as dividends.

This description should make evident that the association is quite unlike the usual business corporation and that its members are not holders of shares of stock in the usual sense. In the ordinary business corporation, the stockholder in legal contemplation is sharply differentiated from the corporation itself, and his interest is regarded as a form of property which may be sold or transferred and otherwise dealt with as such. But it is not an indispensable feature of incorporation that that pattern always be followed. This depends primarily upon the laws and, in this

case, the charter which defines the organizational features of the corporation and the rights and status of the shareholders in it. Here the pattern was not followed. The interest of the member with a share account has two aspects. First, he is a member—a member of an incorporated association. Instead of a property right in the sense of ownership of stock, he has a defined status within the organization. Second, the member owns an account, which, subject to certain conditions, he may liquidate at any time. It is true that the application for the opening of the account is put in terms of a purchase of shares and that a withdrawal of funds is in terms of a repurchase by the association of shares. But it is noteworthy that the forms for deposit and withdrawal speak not only of membership but also of an account. The application signed when the account is first opened reads: "I hereby apply for membership and a ..... share account in the" association. The so-called repurchase application asks "for the repurchase of ........... Dollars ($......) from my share account."

The terms in which the transaction is put no doubt may be accounted for by the origin from which this kind of association seems to have stemmed. The first of this type were the building and loan associations. For their description, see Fagan v. People's S. & L. Assn. 55 Minn. 437, 57 N. W. 142. The difficulties encountered in their early history demonstrate the necessity of the courts constantly keeping before them the substance of the transactions involved rather than the mere words chosen to describe them. See Maudlin v. American S. & L. Assn. 63 Minn. 358, 65 N. W. 645. In the present case, one cannot avoid recognizing the fact that a member of the respondent association has, in substance, a savings account in what to him is, in effect, a savings bank. The average member probably would be much surprised if he were told that it was anything else.

What the member has, then, in his right to demand a repurchase, is a chose or thing in action; the right to demand that he be paid the amount in his share account to which he is entitled. As such, it is as subject to seizure by levy of execution as any

other chose in action and by the methods prescribed in Minn. St. 1941, § 550.14 (Mason St. 1927, § 9429).

These views are in full accord with such cases as we have found on the subject. A trustee proceeding against a coöperative bank organized along lines similar to those of the association here was sustained in Atwood v. Dumas, 149 Mass. 167, 169, 21 N. E. 236, 3 L. R. A. 416, where Mr. Justice Holmes said: "it does not follow, because the defendant is a member, that she may not be a creditor also in respect to her money paid in." Other cases in accord are Central Nat. Bank v. Rubenstein, 35 Del. 154, 160 A. 871; Morris Resnick B. & L. Assn. v. Barnes, 108 Pa. Sup. 218, 164 A. 358.

The levy of execution thus permitted does not involve the transfer of a share of stock or of the debtor's membership in the association. The sheriff does not sell the share account. He merely collects from the association the "thing in action," see Minn. St. 1941, § 550.08 (Mason St. 1927, § 9423), namely, the amount in the debtor's account to which the debtor is entitled. Hence the uniform stock transfer act has no application, and the share certificate need not be seized to render the levy effective. Morris Resnick B. & L. Assn. v. Barnes, *supra.*

The provision in the charter that "holders of share accounts filing written application for repurchase shall remain holders of share accounts until paid and shall not become creditors" does not alter the situation. The provision obviously is there to prevent holders of share accounts, in the event of insolvency, from gaining a priority over other members or sharing the assets with creditors by the mere filing of an application. See Heinbokel v. National S. L. & B. Assn. 58 Minn. 340, 59 N. W. 1050, 25 L. R. A. 215, 49 A. S. R. 519. It has no broader effect. Conditions to repurchase such as payment of prior applications, the lapse of time, and the availability of funds may entitle the association to delay the payment of the money levied upon, but they do not affect the validity of the execution.

A point is made of the fact that the association is a federal corporation and that if the levy is permitted it will violate the

provisions of the charter. Under the view we have taken of the case, we find nothing in the charter with which the levy, as here permitted, conflicts. The association is not compelled to accept a new member without its consent. No sale of the share account will take place. The judgment creditor gets by the levy no more than the debtor could have received and on no different terms.

We observe that the account was not in the name of the defendant Edna Hegna alone but in her name "or Marie J. Bodene." How this affects the right of the plaintiff under the levy to the amount of funds in the share account we do not consider. The point is not raised and cannot be until a full return or disclosure has been made by the association under the levy.

The order denying the motion is accordingly reversed and the case remanded for further proceedings thereon in accordance with this opinion.

## ON PETITION FOR REARGUMENT.

On December 18, 1942, the following opinion was filed:

PIRSIG, JUSTICE.

Respondent in its petition for rehearing calls our attention to First Nat. B. & T. Co. v. Malerich, 193 Minn. 626, 259 N. W. 546, not previously cited by either party. It was held there that a certificate for a share of stock in a state savings and loan association need not be issued to the member in order to subject the stock to garnishment, since this is merely a ministerial act. This is entirely consistent with our holding in the instant case.

The petition for rehearing is denied.